**Harry G. BELLAIRE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14-02-00501-CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 3, 2003.

Will Outlaw, Houston, for appellants.

Dan McCrory, Houston, for appellees.

Panel consists of Justices HUDSON, EDELMAN, and JOE L. DRAUGHN.*

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

Appellant, Harry G. Bellaire, was charged by indictment with aggravated sexual assault; he entered a plea of not guilty. A jury convicted appellant and assessed his punishment at six years of community supervision and a $6,000 probated fine. As a condition of his probation, the trial court sentenced appellant to six months in Harris County Jail. On appeal, appellant contends the trial court (1) improperly denied his motion to suppress; (2) failed to admit relevant evidence; and (3) prohibited appellant from cross-examining the complainant on certain facts. Appellant also contends the evidence was factually insufficient to support his conviction. We affirm.

## Background

On December 7, 2000, complainant, Sonya[1] and her cousin Theresa attended a corporate Christmas party at the Petroleum Club. There, Sonya drank between six and eight alcoholic beverages in a few hours. Sonya became ill and excused herself to the restroom where Theresa found her vomiting in a stall. Theresa brought Sonya a glass of ice water and a wet towel for her neck. Theresa tried to lift Sonya to leave the party, but because Sonya had little, if any, control over her body, Theresa knew she could not get Sonya home. At Sonya's urging, Theresa returned to the party.

Theresa checked on Sonya periodically. So people could not see Sonya's condition, Theresa helped her back into the bathroom. As Theresa tried to move her, Sonya became ill and vomited again. Theresa then took Sonya to a couch in the bathroom and brought her another glass of ice water and a towel for her face. Theresa also propped the door open with a chair because the vanity area of the bathroom was extremely hot. A few minutes later, Theresa checked on Sonya again and found her asleep in the hallway on a bed of armless chairs. Theresa asked her if she wanted to return to the restroom but received no response. Theresa gripped Sonya by both arms and returned her to the bathroom where she got sick again. Theresa then helped Sonya to the couch and returned to the party to wait for people to leave, so she could later help Sonya out of the club without anyone seeing her condition.

Approximately twenty to thirty minutes later, Theresa checked on Sonya again and found the bathroom door closed and Sonya's clothing disheveled and the bathroom dark. Sonya's dress was hiked up above her thigh, one of her breasts was outside her dress, her underwear and pantyhose were removed from one leg, and her shoe was laying on the floor next to her. Theresa woke Sonya and asked her what happened. Sonya could not remember anything, but felt moist and tender in her vaginal area as if she had just had sexual intercourse. Theresa notified the club's management who called the police to investigate. Paramedics arrived minutes later and transported Sonya to a local hospital for a rape examination. Semen was detected on Sonya's clothing which was later tested for DNA. It matched that of appellant, who was arrested and charged with aggravated sexual assault.

* Senior Justice Joe L. Draughn participating by assignment.

1. To avoid revealing the complainant's identity, we will refer to the complainant as "Sonya," and to her cousin as "Theresa."

## Motion to Suppress

In his first issue, appellant contends the trial court erred in denying his motion to suppress DNA evidence because it was the product of a warrantless search and seizure. He argues his employer coerced him to attend a meeting and submit to giving a sample of his saliva to police officers. The State contends appellant consented to giving the sample.

We review a trial court's ruling on a motion to suppress evidence under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Under this standard, we view "the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical fact supported by the record. *Id.* However, when mixed questions of law and fact exist which do not turn upon an evaluation of credibility and demeanor, we review the trial court's decision under a *de novo* standard. *Id.*

Consent is a well-established exception to the constitutional requirements for both a search and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex.Crim.App.2000). The consent must be voluntary, which is a question of fact determined from a totality of the circumstances surrounding the alleged consent. *Id.* To be valid, the consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* The federal constitution requires the State to prove the voluntariness of consent by a preponderance of the evidence while the Texas Constitution requires the State to show by clear and convincing evidence that a defendant voluntarily consented. *Id.* If the record shows a finding by clear and convincing evidence that a defendant voluntarily consented, we will not disturb that finding. *Id.*

The facts reflect that the police contacted the Petroleum Club to conduct voluntary DNA testing of the male employees who worked on December 7, 2000, the day of the sexual assault. Werner Sanz, manager of the Petroleum Club, produced a list of those employees and sent them a memorandum announcing a mandatory meeting. At the meeting, Lawrence Finder, attorney for the Petroleum Club, explained that police officers would arrive later in the day to speak to the listed employees and ask them to submit to a voluntary saliva test. Finder told the employees that (1) the club encouraged its employees to cooperate with police, (2) the club would accompany anyone during police questioning, (3) if an officer requests a saliva sample, the club would be present, (4) an employee could hire an attorney and refuse to speak to the officers and refuse the saliva test, (5) police had a list of employees working on the night at issue and would note any employee who refused to cooperate, and (6) if an employee refused to speak to police or give a saliva sample, they could seek a subpoena or court order to obtain the sample.

Appellant first complains he involuntarily consented to the saliva sample because the memorandum failed to address the purpose of the meeting. While some employees may not have known the purpose of the initial meeting, appellant did. As assistant manager of the Petroleum Club, appellant discussed the sexual assault and subsequent police inquiry on a regular basis with Sanz from the time of the attack, on December 7, 2000, until the day of the meeting, January 31, 2001. Every Friday and Saturday night over that period, appellant and Sanz had dinner and discussed how police were handling the case. Appellant knew police wanted saliva samples from the male employees working on the day of the assault, and he never told Sanz he objected to the sample, and instead

suggested he would cooperate. Sanz informed appellant about the memorandum days before it was posted, and appellant did not object to the sample at that time either.

Appellant also contends he was forced to give a saliva sample because Sanz was appellant's immediate supervisor. Although the club encouraged employees to give a saliva sample, the club did tell employees the sample was completely voluntary. The club never threatened to fire, discipline, or punish appellant for failing to give a saliva sample and nothing in the record suggests the club took that approach with any of the listed employees. When Houston Police Officer Ralph Yarborourgh arrived at the club to take the saliva samples, he reinformed the employees that the sample was completely voluntary. *See Goines v. State*, 888 S.W.2d 574, 578 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (right to refuse search is one factor to look at when determining if consent was voluntarily given). The officers did not touch or threaten appellant nor did they display any weapons to gain appellant's consent to the sample. Although the Petroleum Club did state the officers could get a subpoena for the employees that failed to cooperate, that by itself does not invalidate appellant's consent. *See id.* (the fact an officer asserts he can obtain a search warrant does not invalidate an otherwise voluntary consent).

Some employees actually left the room and refused to give a saliva sample. Appellant, on the other hand, formed a line with the other employees and subjected himself to the sample. Appellant never tried to exit the room or protest the saliva sample. Thus, no evidence suggested appellant's consent was involuntary; rather, the evidence suggests it was freely and voluntarily given. Based on the totality of the circumstances, and viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion when it found appellant's consent to give the saliva sample was voluntary and not the result of any coercion from the Petroleum Club or police. Accordingly, appellant's first issue is overruled.

**Factual Insufficiency**

■■■ In his second issue, appellant contends the evidence was factually insufficient to support the verdict because the State failed to prove appellant penetrated complainant with his penis. When conducting a factual sufficiency review, the evidence is viewed in the light most favorable to the verdict, and the verdict is set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex.Crim.App. 2000). The evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex.App.-Austin 1992, no pet.). We consider the factfinder's weighing of the evidence and can disagree with the factfinder's determination. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). However, we are not free to reweigh the evidence and set aside a verdict merely because a different result is more reasonable. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We must defer to jury findings and find the evidence is factually insufficient "only where necessary to prevent manifest injustice." *Id.*

Appellant argues the evidence is factually insufficient because the complainant denied having pain a few hours after the attack and she did not know whether she was sexually assaulted. Although the complainant denied having pain during her rape examination, she did feel as if she had

just had sexual intercourse. She felt moist in her vaginal area, on her legs, and on her panties and the lips of her vagina were sore. Moreover, Isaac Grate, Jr., a physician in the emergency department of Christus St. Joseph Hospital, testified that not all sexual assaults result in pain or trauma to the complainant, depending on the compatibility of the individuals involved and the circumstances. Here, the complainant was unconscious during the sexual assault and her rape examination was not performed until three hours later, which could make any signs of penetration difficult to detect. Although appellant's DNA was not detected in the complainant's vagina, p30 antigen was. The p30 antigen is only produced by males, and present in, among other things, pre-ejaculate and remains detectable in a woman's vagina for approximately two days. The complainant testified she had sexual intercourse six days before the sexual assault, and thus, the jury could infer from the time frame that the p30 antigen came from appellant. When a nurse examined complainant, she was unsure if she had been sexually assaulted which she clarified when she explained something physical had happened, but she could not remember it actually happening.

Appellant also argues a potential monetary settlement between the complainant and the Petroleum Club inspired the complainant to bring forth new details of the sexual assault. The complainant also allegedly filed a lawsuit against the Petroleum Club and appellant. This information was brought before the jury. The complainant testified that she had talked to attorneys regarding a civil suit against the Petroleum Club and appellant. She also stated her attorney had made a settlement demand to the Petroleum Club. Thus, the jury, knowing of the complainant's potential lawsuit against the Petroleum Club and appellant, could draw their own con-

clusion as to its effect, if any, on her credibility in this case.

The jury disregarded appellant's defense as was its right. *Moore v. State,* 804 S.W.2d 165, 166 (Tex.App.-Houston [14th Dist.] 1991, no pet.) (holding jury is entitled to accept the State's version of the facts and reject appellant's version or reject any of the witnesses' testimony). The jury is the sole judge of the credibility of the evidence and may accept or reject all or any part of the witnesses' testimony. We find the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's second issue is overruled.

**Photographs**

■ In his third issue, appellant contends the trial court erred in excluding photographs of his penis. Appellant argues that had the jury seen the enormous size of his penis, they would have questioned whether appellant penetrated the complainant because she suffered no trauma or pain.

■ The admissibility of a photograph is within the sound discretion of the trial court. *Williams v. State,* 958 S.W.2d 186, 195 (Tex.Crim.App.1997). Absent a clear abuse of discretion, the reviewing court will not disturb the trial court's decision to exclude evidence. *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App. 1990). All relevant evidence is admissible. TEX.R. EVID. 402. Relevant means "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401.

Assuming, *arguendo,* appellant's description of his penis is accurate, the photographs are irrelevant. Dr. Grate testified that the size of a penis could de-

termine the amount, if any, of tearing, abrasions, and redness that a sexual partner would experience after intercourse. However, the size of a penis, alone, would not determine the effect the male would have on a female's genitalia. Instead, to determine the compatibility of the individuals, the size of the penis must be compared with the female genitalia and under what circumstances the sexual intercourse took place.

Here, appellant did not offer the photographs to compare his penis with the complainant's genitalia or to establish the circumstances of the sexual assault. He merely wanted to admit the photographs to support the supposition that had he penetrated the complainant, she would have received trauma and abrasions. Additionally, during the sexual assault, the complainant was unconscious and she was not examined for any tearing, abrasions, or redness until three hours after the attack, which is enough time under the circumstances to minimize evidence of penetration. Because the photographs alone could not establish the relative compatibility of both parties' genitalia, the photographs were irrelevant as to whether appellant penetrated the complainant and the trial court properly excluded them. *See* Tex.R. Evid. 401. Accordingly, appellant's third issue is overruled.

### Potential Litigation

■ In appellant's fourth issue, he contends the trial court erred in excluding evidence of the details of a settlement demand from the complainant on the Petroleum Club. Appellant contends the specific amount of the demand would establish complainant's bias for testifying against him.

The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. U.S. Const. amend. VI; *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Similarly, the Texas Constitution provides that, in all prosecutions, the accused shall be confronted with the witnesses against him. Tex. Const. art. I, § 10.

■ Implicit in the right of confrontation is the right of cross-examination. *Davis,* 415 U.S. at 315, 94 S.Ct. at 1110. The accused is accorded great latitude in showing witness bias or motive to falsify testimony. *Carroll v. State,* 916 S.W.2d 494, 497 (Tex.Crim.App.1996). The extent of the cross-examination, however, is limited. *Hoyos v. State,* 951 S.W.2d 503, 510 (Tex.App.-Houston [14th Dist.] 1997), *aff'd,* 982 S.W.2d 419 (Tex.Crim.App.1998). The trial court's decision to limit cross-examination is not subject to reversal absent an abuse of discretion. *Love v. State,* 861 S.W.2d 899, 903 (Tex.Crim.App.1993). Whether the trial court abused its discretion depends on the facts of the case. *Id.*

The trial court held a hearing outside the jury's presence to discuss what information the jury should hear regarding any potential litigation between the complainant and the Petroleum Club. The complainant testified she had hired an attorney and had made a settlement demand on the Petroleum Club for one million dollars, the alleged insurance policy limit for circumstances such as that at issue. After the hearing, in the presence of the jury, the complainant denied that a suit was filed against the Petroleum Club but admitted her attorney had made a settlement demand on the club for an unspecified amount for any of her personal injuries from the sexual assault at issue.

Although the trial court allowed appellant to cross-examine the complainant about the settlement demand on the Petro-

leum Club, it was limited. Appellant argues that while the jury did know the complainant may have had at least some bias against appellant, they could not have known the extent of any alleged bias without knowing the insurance policy limit. We will examine the court's limitation of appellant's cross-examination limit concerning further details of the potential lawsuit under a harmless error analysis. *See Mallory v. State*, 752 S.W.2d 566, 569 (Tex. Crim.App.1988).

When doing a harmless error analysis, the reviewing court examines the entire record and applies a three-prong test. *Young v. State*, 891 S.W.2d 945, 948 (Tex. Crim.App.1994). In the first prong, the court must assume the "damaging potential of the cross-examination [was] fully realized." *Shelby v. State*, 819 S.W.2d 544, 547 (Tex.Crim.App.1991). With that in mind, the court must consider the following five factors: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* Finally, the court must determine if the error was harmless beyond a reasonable doubt. *Id.*

For the purposes of this case, we will assume appellant needed to question the complainant about the specific dollar amount of her settlement demand to show her bias or motive in testifying against him. To convict appellant of aggravated sexual assault, the State had to show he penetrated the complainant. While the complainant testified she felt moist and sore in her vagina, that evidence was cumulative. The complainant's cousin, Theresa, testified that when she woke the complainant up almost immediately after the sexual assault, the complainant kept saying something was in her vagina. Additionally, test results revealed p30 antigen in the complainant's vagina which can only come from a male's genitalia and is only detectable in a woman's vagina for two days. During the complainant's rape examination only hours after the sexual assault, she told the nurse she had not had sexual intercourse in the last six days. Thus, the jury was entitled to believe her testimony and could only infer the p30 came from appellant. Additionally, appellant's semen was found on the complainant's dress, pantyhose, and underwear.

Although the jury did not know the exact amount of the settlement demand, they did know it existed and could infer for themselves any bias or motive the complainant may have had against appellant and could balance that factor against the other evidence presented. It is clear the State had a strong objective case against appellant and the jury is quite capable of judging the credibility of the complainant's testimony. Consequently, we conclude beyond a reasonable doubt that the error in not admitting evidence of the exact amount which may result from the potential lawsuit does not mandate a reversal. Appellant's fourth issue is overruled.

The judgment of the trial court is affirmed.