Dolores AGRIPINO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–05–00079–CR.

Court of Appeals of Texas,
El Paso.

Feb. 15, 2007.

M. Clara Hernandez, El Paso County Public Defender, San Antonio, for Appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Before CHEW, C.J., McCLURE, and CARR, JJ.

## *OPINION*

KENNETH R. CARR, Justice.

Dolores Agripino appeals her convictions for Practicing Medicine Without a License and Aggravated Assault. Following a jury trial, the Appellant was convicted of sixteen counts of Practicing Medicine Without a License ("PMWL") and eleven counts of Aggravated Assault. She was sentenced to serve ten years in prison and fined $10,000 on each of the PMWL counts. She was sentenced to serve twenty years in prison and fined $10,000 on each of the Aggravated Assault counts. She appeals both sets of convictions.

### FACTUAL SUMMARY

In 2001, Dolores (aka "Irma") Agripino (herein referred to as the Appellant) recruited a large group of her co-workers to take advantage of her low-cost collagen injections. From her home in El Paso, the Appellant and one accomplice injected mineral oil into the bodies of over twenty women, primarily in the breasts and/or the buttocks.

Many of the women were invited to consultation or demonstration meetings in residential homes in El Paso. For ten or fifteen dollars, those who has been recruited by the Appellant or through word of mouth in the factory where she worked were told about the benefits of "collagen with elasticity" injections and how the Appellant and her partner could provide them for less than what a specialist physician would charge. During the presentation, the Appellant and Penelope wore nurses' uniforms and told the audience they worked for doctors. Price quotes were provided, depending on what body part the customer wanted injected and how many separate injections were needed. Once a woman expressed interest, she was told to bring the full quoted amount, in cash, for her first injection. The women met at the Appellant's home, where a waiting area was set up in the living room on the main floor. Each woman waited for her name to be called before going to an upstairs bedroom where the injections were given. Initially, the Appellant acted as Penelope's assistant, filing and preparing the syringes. Eventually, she began injecting the women herself. The substance was stored in clear, unlabeled, "baby bottles" and carried in a zippered lunch container. The substance was described as a clear or transparent liquid. After the injections, the witnesses were told to massage the injected area, because the liquid would only work if it was distributed properly. When she was confronted later with complaints about lumps developing at the injection sites, the Appellant insisted the women were not doing the massages correctly. She instructed the women to rub the areas harder and continued administering the injections. Within months of the injections, many women developed hard lumps at or near the injection sites, discoloration of the skin, and severe pain. Many have been forced to resort to multiple surgeries to remove the lumps of oil and have been left scared and disfigured.

The Appellant brings five issues in this appeal. In Issues One and Two, she asserts that the evidence was both legally and factually insufficient to support her PMWL convictions. In Issues Three and Four, she asserts that the evidence was also legally and factually insufficient to maintain her Aggravated Assault convictions. In Issue Five, she argues that the trial court erred by denying her motion to quash the indictment. Finding no reversible error, we affirm.

### DISCUSSION

Before we address the sufficiency of the evidence presented at trial, we will address the Appellant's contention that the trial

court committed reversible error by denying her motion to quash the indictment. She argues that the indictment failed to give her sufficient notice of the charges against her and that she was therefore denied an opportunity to prepare an adequate defense.

 The sufficiency of an indictment is a question of law. *State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App.2004); *State v. Meadows,* 170 S.W.3d 617, 619 (Tex.App.-El Paso 2005, no pet.). When the resolution of a question of law does not turn on an evaluation of witness credibility and demeanor, the trial court is not in an appreciably better position to make the determination than is an appellate court. *Moff,* 154 S.W.3d at 601; *see also Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Thus, we review the sufficiency of an indictment *de novo. Id.; Meadows,* 170 S.W.3d at 619.

 The accused is guaranteed the right to be informed of the nature and cause of the accusation against him in all criminal actions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Curry v. State,* 30 S.W.3d 394, 398 (Tex.Crim.App.2000). This constitutional mandate requires that the charging instrument convey adequate notice from which the accused may prepare his defense. *Moff,* 154 S.W.3d at 601. A motion to quash should be granted only where the language concerning the defendant's conduct is so vague or indefinite as to deny him effective notice of the acts which he is alleged to have committed. *State v. Seibert,* 156 S.W.3d 32, 35 (Tex. App.-Dallas 2004, no pet.). To determine whether it sufficiently charges an offense, the indictment will be read as a whole. *Dennis v. State,* 647 S.W.2d 275, 279 (Tex. Crim.App.1983).

 A defect of form does not render an indictment insufficient unless the defect "prejudice[s] the substantial rights of the defendant." TEX. CODE CRIM. PROC. ANN. § 21.19 (Vernon 1989); *Olurebi v. State,* 870 S.W.2d 58, 61 (Tex.Crim.App.1994). To determine whether the defendant had notice adequate to prepare his defense, we must first determine whether the charging instrument failed to provide all the requisites of "notice." *Olurebi,* 870 S.W.2d at 61. If the indictment gave sufficient notice, our inquiry ends. *Id.* If it did not, we must ask whether, in the context of this case, the deficiency had an impact on the defendant's ability to prepare a defense and how great any such impact was. *Id.* at 61–62.

The Appellant contends that there were two defects in this indictment. First, she argues that the PMWL charge failed to give her proper notice, because there are multiple ways by which one can "practice medicine" under sec. 151.002(a)(13) of the Texas Occupations Code, TEX. OCC. CODE ANN. § 151.002(a)(13), and the indictment did not specify which one was being alleged. Second, she argues that the charges for aggravated assault did not specify what act or acts constituted recklessness. We will address each argument in turn.

██ In charging the Appellant with PMWL, the indictment alleged that she "did then and there, intentionally and knowingly practice medicine without a license or permit, thereby, causing physical or psychological harm to [complainant's name] by injecting [complainant's name]'s body with mineral oil."

 The indictment described the offense by tracking the statutory language in sec. 165.153(a) of the Texas Occupations Code. TEX. OCC. CODE ANN. § 165.153(a) (Vernon 2004). Generally, an indictment which tracks the statutory language is sufficient to provide notice. *Curry,* 30

S.W.3d at 398. However, tracking the language of a statute may not be sufficient, if the statutory language is not completely descriptive of the offense. *Id.* When a statute provides more than one means of commission, the indictment must identify which of the statutory means it addresses. *Id.* On the other hand, the State is generally not required to plead evidentiary matters. *Id.*

According to the statutory definition of the term "practicing medicine," this offense can be committed in several different ways: "diagnosis, treatment, or offer to treat ... or the attempt to effect cures ...." Tex. Occ. Code Ann. § 151.002(a)(13) (Vernon 2004 & Supp.2006). None of these terms was listed on the face of the indictment. Read as a whole, however, the indictment does specify that the Appellant was charged specifically with the act of injecting the complainants with mineral oil. Injecting a substance into the human body is reasonably regarded as more than an "offer to treat" or a "diagnosis," and there is nothing in the indictment as a whole to indicate that the Appellant was charged with attempting to cure a disease or ailment. The indictment provided adequate notice to the Appellant that she was being charged for the mineral oil "treatments" as provided in the definition of "practicing medicine." *See id.*

The Appellant also argues that the State failed to allege what act or acts constituted recklessness regarding the aggravated assault charge. A person commits the offense of assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another ...." Tex. Penal Code Ann. § 22.01(a)(1) (Vernon 2003 & Supp. 2006). When the State alleges that the defendant acted recklessly in the commission of an offense, the indictment must also allege the act or acts relied upon to constitute recklessness, with reasonable certainty. Tex. Code Crim. Proc. Ann. art. 21.15 (Vernon 1989). An indictment is insufficient if it merely alleges that the accused acted recklessly in committing the offense. *Id.* The indictment must allege with reasonable certainty the act or acts relied upon to constitute recklessness, so as to inform the accused of the nature of the reckless act of which he is accused. *Id.* Again, however, the State is not required to plead additional evidentiary facts. *Curry,* 30 S.W.3d at 398; *State v. Emanuel,* 873 S.W.2d 108, 108–109 (Tex. App.-Dallas 1994, no pet.).

The aggravated assault indictment alleged that "Defendant ... did then and there recklessly cause serious bodily injury to [complainant's name], to wit: by injecting mineral oil, instead of collagen, into [complainant's name] without her consent ...." This indictment is sufficient, because it adequately informed the Appellant of the act the State relied upon to constitute recklessness: namely, injecting a foreign substance into the complainants' bodies. The Appellant therefore had reasonable notice of the reckless act of which she was accused. Having determined that the indictment was sufficient on both charges, we overrule Issue Five.

In Issues One through Four, the Appellant contends that the evidence is both legally and factually insufficient to sustain her conviction on both charges. We will address both the legal and factual sufficiency of the evidence regarding the PMWL conviction first.

When examining the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Lacour v. State,* 8 S.W.3d 670, 671 (Tex.Crim.App.2000) (*citing Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2789,

61 L.Ed.2d 560 (1979)); *Hernandez v. State,* 946 S.W.2d 108, 110–11 (Tex.App.-El Paso 1997, no pet.). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as these are the functions of the trier of fact. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App.2000). As a reviewing court, our duty is to determine whether both the implicit and explicit findings of the trier of fact are rational, by viewing all the evidence admitted at trial in the light most favorable to the verdict. *See Adelman v. State,* 828 S.W.2d 418, 422 (Tex.Crim.App.1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all of the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand or if the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Therefore, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.* In performing this review, we are to give due deference to the fact finder's determinations. *See id.* at 8–9; *Clewis,* 922 S.W.2d at 136. The fact finder is the judge of the credibility of

the witnesses and may "believe all, some, or none of the testimony ...." *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim. App.1991). Consequently, we may find the evidence factually insufficient only where necessary to prevent a manifest injustice from occurring. *See Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

 In Issues One and Two, the Appellant argues that the evidence is legally and factually insufficient to support her conviction, because the State failed to prove that she held herself out as a physician. She also argues that, because the injections were given "purely for vanity reasons," there was no evidence that she practiced medicine as defined in the Texas Occupations Code.

The Texas Occupations Code states that a person commits an offense if he practices medicine without a license or permit and causes another person: (1) physical or psychological harm; or (2) financial harm. TEX. OCC. CODE ANN. § 165.153(a) (Vernon 2004). The term "practicing medicine"—

> [M]eans the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:
>
> (A) publicly professes to be a physician or surgeon; *or*
>
> (B) directly or indirectly charges money or other compensation for those services.

TEX. OCC. CODE ANN. § 151.002(a)(13) (Vernon Supp.2006) (emphasis added).

The clear language of the statute, which is written in the disjunctive, provides that the offense can be proven based on evidence of either (A) public profession or (B) charging compensation for the service. *Cf. Green v. State,* 137 S.W.3d 356, 365 (Tex.

App.-Austin 2004, pet. ref'd) (holding that it was unnecessary to determine whether the defendant charged money or compensation for medical services, because the defendant's "public profession" to being a physician satisfied the necessary elements of the statute).

In *Green*, the defendant held himself out as a physician by setting up a medical clinic called the "Austin Complement Health Clinic" to screen patients for sexually transmitted diseases. *Green*, 137 S.W.3d at 360–61. The defendant, who introduced himself to patients as "Dr. Markus Green," wore a white lab coat and performed a gynecological exam on the complainant. *Id.* at 360. The Austin Court determined the evidence was legally and factually sufficient to uphold Green's conviction under the "public profession" prong of the statute. *Id.* at 365, 366–67.

Appellant Agripino's case presents the other prong of the statutory definition from the facts of *Green*. In this case, there is little evidence the Appellant held herself out as a physician, but there is abundant evidence that she charged money for her services. Indeed, while the Appellant asserts that there is legally and factually insufficient evidence that she held herself out as a physician, she does not deny that she charged money for her services.

Numerous witnesses testified to the amounts of money they paid the Appellant and Penelope for the injections. The charges ranged from $175 for facial injections, up to $2,500 for breast injections. The Appellant and Penelope also offered several women discounts from $160 to $170 for each additional person they brought to the treatment sessions. One of the victims also testified that, on one occasion, she accompanied the Appellant to a bank, where the Appellant made a deposit. She described the deposit as "a lot of money"

and testified that the Appellant told her it was the money she made on the injections.

Viewed in the light most favorable to the verdict, we find the evidence is legally sufficient to support a finding that the Appellant did "charge money or other compensation" for the injections. *See* TEX. OCC. CODE ANN. § 151.002(a)(13)(B) (Vernon Supp.2006). Viewing all the evidence in a neutral light, we also find the evidence is factually sufficient to support the jury's finding that the Appellant did charge for her services.

In light of our holding on the second prong of the statutory definition, we find it unnecessary to consider whether there was factually sufficient evidence to prove that Appellant "publicly professed" to being a physician.

■ We now turn to the Appellant's argument that her actions did not constitute "practicing medicine." In her second challenge to the PMWL conviction, the Appellant argues that injecting a substance into another person purely for vanity reasons does not fall under the sec. 151.002(a)(13) definition of "practicing medicine," because it is not a treatment or cure for any type of disease, disorder, or deformity.

Mari Robinson, manager of investigations with the State Board of Medical Examiners, testified that the act of injecting foreign matter into the body under the circumstances in this case would be considered the practice of medicine by the board. Robinson also testified that the board would consider injections into an individual's breasts or buttocks for enhancement purposes practicing medicine. She explained that—

> [W]e would consider this to be the practice of medicine ... injecting something into someone for a desired effect using a prescriptive device to maintain an out-

come or to treat what the person may consider to be a deformity.

This is at least some evidence that, viewed in the light most favorable to the verdict, supports the jury's verdict that the Appellant's actions constituted "practicing medicine." Having viewed the record in a neutral light, we also find that the jury's decision that the Appellant did practice medicine was not clearly wrong or manifestly unjust. The evidence was both legally and factually sufficient to support the Appellant's conviction for Practicing Medicine Without a License. Issues One and Two are overruled.

In Issues Three and Four, the Appellant asserts that the evidence is legally and factually insufficient to support her conviction for aggravated assault. One commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp.2006). An "aggravated" assault results in serious bodily injury to another. TEX. PENAL CODE ANN. § 22.02(a)(1) (Vernon Supp.2006).

There is no dispute that numerous victims were seriously injured by the injections; the question is whether the Appellant had the requisite mental culpability for aggravated assault. She argues that the State failed to prove she acted recklessly, because the evidence showed that she believed, like the victims, that the injections were actually collagen.

 One acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (Vernon 2003). Reckless conduct involves conscious risk creation; that is, the actor is aware of the risk surrounding his conduct or the results

thereof, but consciously disregards that risk. *Licon v. State*, 99 S.W.3d 918, 928 (Tex.App.-El Paso 2003, no pet.). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the actor's standpoint. *Id.* Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App.1978); *Todd v. State*, 911 S.W.2d 807, 815 (Tex.App.-El Paso 1995, no pet.). Ordinarily, this proof must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex.Crim.App.1984); *Todd*, 911 S.W.2d at 815. Therefore, the defendant's culpability is a fact issue for the jury. *See State v. Hart*, 905 S.W.2d 690, 693 (Tex.App.-Houston [14th Dist] 1995, pet. ref'd).

 In support of her argument that she was not reckless because she believed the substance was actually collagen, the Appellant points to the testimony of three witnesses. First, the Appellant's daughter, Irma Yvonne De La Cruz, testified she received injections in her breasts. Second, complainant Maria Zamora testified that she was induced to have the injections when she was told the Appellant's daughter had been injected with the same substance. Zamora explained, "I didn't think it was anything bad or that a mother would actually inject her daughter with anything other than collagen." Third, through the testimony of El Paso Police Detective Ricardo Elias, photographs of alleged injection sites on the Appellant herself were introduced into evidence. The Appellant asserts that this evidence proves that she believed the substance was collagen, because she would never have injected herself or her daughter with a

substance other than collagen. She also argues this evidence proved she "had no intension of harming the complainants" and was therefore not aware of, and could not have disregarded, any substantial and unjustifiable risk.

The jury is the sole judge of the credibility of the evidence and may accept or reject all or part of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000); *Bellaire v. State*, 110 S.W.3d 664, 670 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). The Appellant's son, daughter, and niece all testified that they received injections. The Appellant's son and niece had no side effects from their alleged facial injections. The Appellant's daughter testified that she received multiple injections in her breasts, and although she developed lumps near the injection sites, she had not experienced any pain or discoloration at the time of trial. The jury was within its discretion as the trier of fact to reject the testimony of these witnesses. *See id.*

The jury was also within its discretion to infer from the circumstances that the Appellant acted with conscious disregard of the risk of harm. There is evidence that the Appellant understood that this type of cosmetic injection is generally performed by a physician. She explained to one complainant that in a specialist doctor's office she would have to pay much more for the injections. Numerous witnesses testified that the Appellant filled the syringes from clear bottles described as "baby bottles," rather than from marked, sterilized containers. There is also testimony that the Appellant continued to administer injections, even after some of the women confronted her about the lumps and other symptoms they developed at the injection sites. Based on this evidence, the jury could reasonably have inferred that the Appellant was aware of the risk involved in the injections and that she consciously disregarded that risk.

Therefore, having considered the record in the light most favorable to the aggravated assault verdict and given our discussion of the evidence above, we find the evidence legally sufficient to sustain the jury's verdict on those counts. We also find the evidence is factually sufficient, because, when viewed in a neutral light, it is not so weak as to render the jury's verdict manifestly unjust. Accordingly, we overrule Issues Three and Four.

Having overruled all of the Appellant's issues, we affirm the convictions.