

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00244-CR

_____

MILLARD GLENN BELL, Appellant

V.

The State of Texas

_____

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1474504D

_____

Before Sudderth, C.J.; Pittman and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth
Concurring Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. Introduction

When Donna,[1] the complainant, was in second grade, she spent the night with her cousin Katelyn at a relative's house where Appellant Millard Glenn Bell lived. According to Donna, after bedtime that evening, Bell woke her up, handed her Katelyn's pink Nintendo DS game system, and told her to go into the living room. Once in the living room, he told her to play with the game.

After Donna sat down on the couch to play, Bell sat on the floor, and while she played with the game, he touched her "private area"[2] with his fingers. While he was touching her, Bell told her that he would give her a Nintendo DS of her own if she did not tell anyone. But he also warned her that if she told anyone, he would hurt her family. It was undisputed at trial that Bell did buy a Nintendo DS for Donna.

Some years later, when Donna was 13 years old, she related these events to her mother.[3] After this outcry, Donna underwent a forensic interview, followed by a medical exam with a sexual assault nurse examiner (SANE nurse).

---

[1]We use pseudonyms to protect the privacy of the complainant, other minors, and their family members. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]Donna defined her "private area" as the part she used "[t]o pee."

[3]Before Donna told her mother or any other adults who were eighteen or older, *see* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(3), she told Katelyn, her friend Amy, and her cousin Tonya—individually, and at different times—about Bell's having touched her.

At trial, Donna, her mother, the forensic interviewer, the SANE nurse, one of Donna's friends, two of Donna's cousins, and Donna's stepfather testified. A jury found Bell, who was 70 years old at the time of the trial, guilty of one count of aggravated sexual assault of a child under the age of fourteen[4] and assessed his punishment at 30 years' confinement and a $10,000 fine. *See* Tex. Penal Code Ann. §§ 12.32, 22.021.

In five points, Bell appeals, complaining that the trial court abused its discretion by allowing non-outcry witnesses to testify in violation of the hearsay rule, by limiting his cross-examination of the SANE nurse, by sustaining some of the State's objections to his jury arguments, and by the cumulative effect of all of these asserted errors. We affirm.

## II. Evidentiary Objections

In his first and second points, Bell complains that the trial court abused its discretion by allowing the introduction of inadmissible hearsay over his objections. Specifically, Bell complains of testimony from Katelyn and the forensic interviewer about what Donna said to them. In his third point, Bell argues that the trial court

---

[4]Bell had been indicted for two counts of aggravated sexual assault of a child (oral contact with Donna's sexual organ and digital penetration of Donna's sexual organ) and two counts of indecency (causing Donna to touch his genitals and exposing his genitals to Donna). Before trial began, the State waived one of the indecency counts; it waived the other during trial. The jury found Bell not guilty of aggravated sexual assault by oral contact, and the trial court entered a judgment of acquittal on that count.

3

abused its discretion by refusing to allow him to ask the SANE nurse about other statements that Donna made to her.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83.

## A. Hearsay

Under our rules of evidence, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Within the context of the rule, a "statement" is "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." Tex. R. Evid. 801(a). And a "matter asserted" means (1) any matter a declarant explicitly asserts and (2) any matter implied by a statement "if the probative value of the statement as offered flows from the declarant's belief about the matter." Tex. R. Evid. 801(c). "So far as Texas's law of evidence is concerned, hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804, or it is allowed 'by other rules prescribed pursuant to statutory authority,'" such as code of criminal procedure article 38.072, the "outcry" exception. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011) (quoting Tex. R. Evid. 802).

4

With regard to hearsay, we must first identify whether the complained-of statements are hearsay and, if so, whether they are subject to any exceptions that would nonetheless render them admissible. *See McCarty*, 257 S.W.3d at 239 (citing Tex. R. Evid. 802); *see also* Tex. R. Evid. 801–805. And we must likewise review the record for error preservation because we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016); *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010).

### 1. Katelyn's Testimony

Bell argues that the trial court abused its discretion by allowing Katelyn, a minor, to testify about what Donna said to her via "artful questioning designed to elicit hearsay indirectly." To support his argument, Bell refers us to the following portions of Katelyn's testimony:

> Q. Okay. I want to take you back to a time a few years ago.
>
> Was there a time when [Donna] confided in you about something?
>
> > [Bell]: Object --
>
> A. Yes.
>
> > [Bell]: Object to that. She's not old enough to testify as an outcry witness, Judge.
>
> > [Prosecutor]: Judge, I'm not offering her as an outcry witness. I'm not even offering the specific statements.

THE COURT: Overruled.

Q. Was there a time that [Donna] confided in you about something?

A. Yes.

Q. We can't get into exactly what she said, but what was her demeanor when she confided in you?

A. She was sad.[5]

[Bell]: Your Honor, we would further object to relevance.

THE COURT: Overruled.

---

[5]Nonverbal conduct is considered hearsay only when it is an *assertive* substitute for verbal expression. *Foster v. State*, 779 S.W.2d 845, 862 (Tex. Crim. App. 1989), *cert. denied*, 494 U.S. 1039 (1990). For example, conduct may be a substitute for verbal expression if the declarant is asked a specific question and responds assertively to that question in a nonverbal manner. *Compare Miller v. State*, No. 12-12-00401-CR, 2013 WL 3243539, at *1, *3 (Tex. App.—Tyler June 25, 2013, no pet.) (mem. op., not designated for publication) (holding that abused wife's nonverbal response of "yes" to whether her boyfriend had choked her after being instructed to blink once for "yes" and twice for "no" fell under excited utterance exception to hearsay rule), *with McMinn v. State*, 558 S.W.3d 262, 269 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that child-complainant's making a Play-Doh figure of defendant's penis was not a substitute for verbal expression when the child made it spontaneously and not in response to a specific question), *Casey v. State*, No. 09-93-00087-CR, 1994 WL 115913, at *1 (Tex. App.—Beaumont Apr. 6, 1994, no pet.) (not designated for publication) (stating that sexual assault complainant's starting to cry when asked by her aunt whether she had been "fooled with" was "not the sort of nonverbal assertive conduct, such as pointing or nodding, which qualifies as a statement for the purpose of the hearsay rule"), *and Reynolds v. State*, Nos. 05-92-01709-CR to 01712-CR, 1994 WL 95480, at *4 (Tex. App.—Dallas Mar. 21, 1994, no pet.) (not designated for publication) (stating that police officer's testimony that abused wife was scared to talk to police simply stated a conclusion he drew after witnessing her demeanor and overall behavior and was not hearsay because her demeanor and overall behavior could not be considered an assertion by her).

Bell voiced no further objections during Katelyn's testimony.

Katelyn proceeded to testify that Donna had been very sad and crying when she confided in her and that Katelyn's reaction to Donna's unnamed revelation was that she was shocked.[6] Katelyn advised Donna to tell someone else, but Donna told Katelyn that she was scared to do so. When asked whether what Donna told her eventually came out later, Katelyn said, "Yes," and upon further questioning, she said that what Donna told her came out later to Donna's mother. When asked whether what Donna told her and what Donna told her mother was why they were at trial, Katelyn said, "Yes."

After Katelyn's testimony concluded, the trial court sent the jury to lunch, and Bell moved for a mistrial, arguing,

> The State has already prejudiced the jury with inadmissible hearsay over Defense objection. State elicited from [Katelyn] just a moment ago on the record that what [Donna] supposedly told her, without going into it, is the same thing that she told her mom . . . who has been noticed by the State as the outcry witness.

> [Katelyn] is under 13. She's not an outcry statement -- witness, but she's effectively become one just to support or bolster what comes in later. We think that's improper, and I don't think that's going to be able to -- to get the error out of the jury's mind. We would ask for a mistrial.

> If the State -- I mean, if the Court denies a mistrial, then we would ask for an instruction for the jury to disregard that testimony.

---

[6]Statements offered only to show their effect on the listener—rather than the truth of the matter asserted—are not hearsay. *See* Tex. R. Evid. 801(d).

The prosecutor responded that the State had not elicited any hearsay because it was merely offering Katelyn's observations of Donna's demeanor and her reaction as the effect on the listener. The trial court denied the motion for mistrial and the requested instruction.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). A party must object as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Reyes v. State*, 361 S.W.3d 222, 228–29 (Tex. App.—Fort Worth 2012, pet. ref'd); *see Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012) (discussing policies underlying the timeliness requirement); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant." (citations omitted)). And, generally, a party must object each time the objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App.

2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.).[7]

Here, Bell objected that Katelyn was not old enough to testify as an outcry witness, i.e., an objection based on the hearsay exception set out in section 2(a)(3) of code of criminal procedure article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(3) (requiring, as one of the factors for admissibility, that a hearsay statement be made "to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense"). But—as set out above—the State did not offer Katelyn as an outcry witness, and the extent of Katelyn's testimony about Donna's statements to her were (1) that Donna told Katelyn that she was scared, and (2) that what Donna told her is what Donna later told her mother; Bell did not timely object to either of these statements on the basis of hearsay. Instead, Bell's other objection in this portion of the record was to relevance, *see* Tex. R. Evid. 401, which he does not raise as a complaint in this appeal. Because Bell did not raise any other objections during Katelyn's testimony, violating both the timeliness and specificity requirements of our preservation-of-error rules, he has not preserved this complaint for our review, and we overrule his first point.

---

[7]That is, a defendant must timely object each time the State offers inadmissible evidence unless the defendant obtains a running objection, which is an exception to the contemporaneous-objection rule. *Geuder*, 115 S.W.3d at 13; *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).

## 2. Forensic Interviewer's Testimony

Bell argues that the trial court abused its discretion by allowing Alexus Chase, the forensic interviewer, to testify about what Donna told her in a "wholesale hearsay regurgitation . . . of the statements made to her by [Donna]," made for no other purpose "than bolstering the complainant's testimony." Bell refers us to the following portions of Chase's testimony to support his argument:

> Q. And during the process of seeking info from [Donna], were you able to obtain information about sexual acts committed against her?
>
> A. Yes.
>
> Q. Okay. Can you tell us about those?
>
> A. So [Donna] talked about being touched. She talked about being --
>
> [Bell]: I'm going to object to hearsay, right to confrontation.[8]
>
> [Prosecutor]: And, Judge, I believe it's not hearsay in this particular instance. It goes to effect on the listener. The answers that [Donna] gave directed how she continued the rest of her interview and prior consistent statements.
>
> THE COURT: The objection is overruled.
>
> Q. What did [Donna] disclose to you about the sexual abuse?

Chase then recounted the following statements that Donna had made to her:

- Bell came to her in the middle of the night, took her to the living room, and touched her "private area";

---

[8]Bell does not complain in this appeal about a violation of his right to confrontation with regard to Chase.

10

- Bell used his fingers, and he licked her private area with his tongue; and

- Bell threatened to hurt her family if she told and would give her a DS if she did not tell.

Chase was the last witness to testify. By the time she testified, Donna, who was 15 years old at the time of the trial, had already told the jury that when she was seven or eight years old, Bell had awakened her, had handed her Katelyn's pink DS and told her to go into the living room to play with it, had touched her "private area" with his fingers, had threatened to hurt her family if she told anyone, and had attempted to buy her silence with the promise of her own DS.

Because a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling, *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998), with the exception of the "licking" statement, we overrule this portion of Bell's second point. *See id.*; *see also Rosales v. State*, 548 S.W.3d 796, 808–09 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (holding that any error in the admission of outcry testimony did not influence the jury's verdict or had but a slight, harmless effect when the same evidence was admitted without objection through two other witnesses, one of whom was the complainant); *Zarco v. State*, 210 S.W.3d 816, 833 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that the erroneous admission of officer's testimony as to child's sexual abuse outcry was harmless when the child gave the same

11

testimony without objection); *West v. State*, 121 S.W.3d 95, 105 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that mother's hearsay outcry-related testimony was not harmful in light of complainant's detailed, factually specific testimony concerning the assault).

With regard to the "licking" statement, during her testimony, Donna denied that Bell had used any other part of his body to touch her private part and testified that she did not remember Bell's having used his mouth on her private area,[9] and the jury acquitted Bell of aggravated sexual assault of a child by oral contact. Accordingly, even if the trial court abused its discretion by admitting the "licking" hearsay statement, Bell was not harmed. *See* Tex. R. App. P. 44.2(b) (requiring the court to disregard any nonconstitutional error that does not affect the appellant's substantial rights); *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."). We overrule the remainder of Bell's second point.

---

[9]Donna testified as follows about whether Bell used his mouth to touch her private area, stating,

> It's like in -- it's like it happened, but like -- it's like it's been so long, so I don't remember like detail, like -- it's like something is like he did, but I don't want to say he did, but I don't want to say he didn't because I know that -- I don't really know how to explain it. It's just like he -- I don't -- it's just I don't remember. It's been so long, so I don't really -- I really don't remember.

12

## B. Cross-Examination

In his third point, Bell complains that the trial court abused its discretion by refusing to allow him to ask the SANE nurse about other statements Donna made to her. He argues that this was constitutional error under *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986),[10] because if he had been allowed to question the SANE nurse about Donna's other statements to her, this might have revealed "even more inconsistencies in [her] testimony, or evidence that someone other than the defendant had committed the act[,] . . . [or] revealed animus towards the defendant."

Bell refers us to the following portion of the record:

> Q. [Defense counsel]: So [Donna] -- or you weren't told. You talked to [Donna], and you talked to mom. You weren't told that [Donna was] severely beat for being in trouble for letting boys in and giving her a hickey; is that right?
>
> [Prosecutor]: I'm going to object to that's relied on hearsay, Judge.
>
> THE COURT: Sustained.

---

[10]In *Van Arsdall*, the Court noted that trial judges retain wide latitude, insofar as the Confrontation Clause is concerned, to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. 475 U.S. at 679, 106 S. Ct. at 1435. A defendant's Confrontation Clause rights are violated when a trial court prohibits *all* inquiry into a possible bias, i.e., when a reasonable jury might have received a significantly different impression of the witness's credibility if the defendant's counsel had been permitted to pursue his proposed line of cross-examination; the focus of the prejudice inquiry must be on the particular witness, not the entire trial's outcome. *Id.* at 679–80, 106 S. Ct. at 1435–36.

[Defense counsel]: Judge, they read completely what [Donna] said, the whole thing. And so *I think I should be able to ask her about what [Donna] told her.* [Emphasis added.]

THE COURT: The objection is sustained.

[Defense counsel]: That's all I have, Judge.

To preserve an argument that the exclusion of defensive evidence violates constitutional principles, a defendant must state the grounds for the ruling that he seeks with sufficient specificity to make the court aware of those grounds.[11] *Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018). A general appeal to a proffer's relevance or a broad expression that the jury needs to get the whole picture of the situation does not adequately articulate a constitutional basis sufficient to preserve the argument for appellate review. *Id.* at 671; *see Reyna v. State*, 168 S.W.3d 173, 179 (Tex.

---

[11]Because Bell addresses only constitutional harm in his brief, we consider this point as a purely constitutional complaint, noting however that he also did not identify any specific non-constitutional bases to support the evidence's admission. *Cf.* Tex. R. Evid. 107 ("Rule of Optional Completeness"); Tex. R. Evid. 404 ("Character Evidence; Crimes or Other Acts"); Tex. R. Evid. 412 ("Evidence of Previous Sexual Conduct in Criminal Cases"); Tex. R. Evid. 613(b) (addressing a witness's bias or interest); *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (stating that an argument that evidence should have been admitted because it was offered to attack a witness's credibility may involve both the Confrontation Clause and the rules of evidence); *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009) (referencing a defendant's right to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him under rule 613(b) and identifying this type of error as non-constitutional under rule of appellate procedure 44.2(b)); *Carroll v. State*, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996) (identifying appropriate cross-examination areas that might expose motive, bias or interest, such as pending criminal charges against a witness or a witness's pecuniary interest in a trial's outcome).

Crim. App. 2005) (explaining that the right of confrontation can be forfeited by a defendant who does not assert it at trial). This is because it is not enough to tell the judge that the evidence is admissible; the proponent must also tell the judge *why* the evidence is admissible. *Reyna*, 168 S.W.3d at 177.

Bell did not articulate that the Confrontation Clause demanded admission of the evidence of what Donna told the SANE nurse, so the trial court never had the opportunity to rule upon this rationale. *See id.* at 179. Therefore, he has failed to preserve his complaint as to the denial of his right to confrontation, and we overrule his third point. *See id.* at 179–80 (explaining that the failure to argue the Confrontation Clause as a ground for admitting evidence in response to a hearsay objection did not give the trial court an opportunity to rule on this theory of admission and therefore resulted in forfeiting the issue); *see also Golliday*, 560 S.W.3d at 670–71 (confirming the rule stated in *Reyna* and holding that the appellant forfeited his Confrontation Clause argument when he never raised a constitutional argument for admitting the evidence by citing any constitutional provisions or any cases involving the Confrontation Clause); *Gonzalez v. State*, No. 02-14-00229-CR, 2015 WL 9244986, at *12 (Tex. App.—Fort Worth Dec. 17, 2015, pet. ref'd) (mem. op., not designated for publication) (reaching same conclusion), *cert. denied*, 137 S. Ct. 169 (2016).

15

### III. Jury Arguments

In his fourth point, Bell contends that the trial court erred by sustaining the State's objections to his jury argument, thereby preventing him from fully arguing his defense at closing. He further argues that by sustaining the State's objections and instructing the jury to disregard his arguments, the trial court foreclosed his ability to use the State's witnesses' testimonies to argue about Donna's credibility.

The trial court has broad discretion in controlling the scope of closing argument. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.); *see also Vasquez v. State*, 484 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("We review the trial court's ruling on the State's objection to a defendant's jury argument for abuse of discretion."). Generally, to be permissible, a jury argument must fall within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to opposing counsel's argument; or (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011), *cert. denied*, 565 U.S. 1161 (2012). The trial court does not abuse its discretion by sustaining an objection to an argument that is not supported by the evidence. *Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980).

Bell directs us to two instances during which the trial court sustained the prosecutor's objections to his arguments, complaining that both instances were either summation of the evidence or a reasonable deduction from the evidence.

16

In the first instance, Bell contended that Chase, the forensic interviewer, was only there as a witness to retell Donna's story and argued, "She didn't have any evidence to present. Oh, yeah, kids oftentimes confuse things, *make things up*. Tell some things to one person. Some things to another person." [Emphasis added.] The prosecutor objected to this argument as mischaracterizing Chase's testimony, complaining, "She never said they make things up." The trial court sustained the objection and granted the prosecutor's request for an instruction to disregard.

Bell directs us to the following portion of Chase's testimony during her direct examination to support his argument:

> Q. Would the way an adult reacts to a statement be different than the way a child would react to the same statement?
>
> A. In my experience, yes.
>
> Q. Do children always -- do they always feel comfortable giving details to anyone that asks?
>
> A. No.
>
> Q. Might the details they give one person differ from the details that they give another person?
>
> A. Yes. The audience plays a huge role in that.

As set out above, Chase did not say that child victims made things up. Rather, she indicated that the particular details offered by a child might differ depending on the listener, but not that the essential facts would change. Accordingly, the trial court did not abuse its discretion by sustaining the prosecutor's objection because Bell's

17

argument was not supported by the evidence. *See id.* We overrule this portion of Bell's fourth point.

After the trial court sustained the above objection, Bell then continued with his argument about how Donna's telling different things to different people and her failure to remember the oral contact raised reasonable doubt as to both aggravated-sexual-assault counts. Bell also argued that Donna had gotten into trouble the day before her outcry for having boys over and for having a hickey on her neck and that she had been punished with a spanking hard enough to leave welts.

Bell then argued that the testimony in the case was "all over the place," and stated, "The detective -- and why everyone tried to downplay it in a preinterview to the forensic interview. *She said she had been touched by a man other than Mr. Bell.*" [Emphasis added.] The prosecutor objected based on mischaracterization of testimony, adding, "The witnesses clearly said that that's not what happened." The trial court sustained the objection and granted the prosecutor's request for an instruction to disregard.

Bell directs us to the following portion of Donna's testimony during her cross-examination to support his argument:

> Q. Do you remember telling someone in preparation for a forensic interview that you had been touched by another man?
>
> A. Yes.
>
> Q. To the best of your ability, is that true?

18

A. Yes.

Q. Did you ever put a name with that other man?

A. Yes.

Q. And we're not talking about Mr. Bell. We're talking about someone else?

A. Oh, no.

Q. Did anyone ever follow-up about that other man?

A. Are you talking about --

Q. When you said you had been touched by another man, as far as you know, did the police or anybody else follow-up on another man?

A. I don't understand the question.

Q. As far as you know, was there an investigation about another man touching you?

A. Yes.

He also refers us to Donna's subsequent redirect examination:

Q. Okay. [Donna], couple of things that I think may have been confused by some of his questions. Okay. So let's try and answer a few of those. He kept -- the Defense counsel kept talking about touched by another man.

Were you touched by anyone other than this defendant, Millard Bell?

A. No, just him.

Q. Okay. So he is the only man who has ever touched your vagina inappropriately?

19

A. Yes.

And Bell refers us to the testimony by Arlington Police Detective Dara DeWall during her cross-examination:

Q. When [Donna] went for a forensic interview, is there a preinterview procedure that is gone through?

A. What do you mean by that?

Q. Is there some sort of preinterview procedure when one goes for a forensic interview?

A. No.

Q. In your report, do you remember referring to, when [Donna] was being screened for her sexual abuse from somebody else, she did indicate that she was touched by someone other than the suspect in this case, another man?

A. She was -- in her forensic interview, I did write that in my -- I believe that I meant to say "did not," but I did put that she had, yes.

Q. Okay. But it says another man?

A. Yes.

Q. In your report?

A. It does.

Q. And that was part of the preinterview according to your report she was --

A. No, that's in the forensic interview.

After the trial court sustained the prosecutor's objection and gave an instruction to disregard, Bell then continued his argument, stating that the detective

"admitted, yeah, that's what I wrote in my report, but I meant she did not," and argued that this put "reasonable doubt all over this case."

The improper denial of a jury argument may constitute a denial of the right to counsel, a constitutional error. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010) (citing *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989), *cert. denied*, 565 U.S. 830 (2011). When reviewing constitutional harm, we take into account any and every circumstance apparent in the record "that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). In doing so, we may consider the nature of the error, the extent that the State emphasized it, its probable collateral implications, and how a juror would probably weigh the error. *Id.* This harmless-error test requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Balderas v. State*, 517 S.W.3d 756, 810 (Tex. Crim. App. 2016), *cert. denied*, 137 S. Ct. 1207 (2017). It does not focus on the propriety of the trial's outcome but rather the error's probable impact on the jury. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). In evaluating whether a defendant was harmed by the trial court's exclusion of the defendant's argument, an appellate court may consider the extent to which the defendant communicated his argument despite the trial court's ruling. *Vasquez*, 484 S.W.3d at 532–33.

Bell's presentation of his theory that Donna was a liar was illustrated through skillful cross-examination. As set out above, he raised the possibility during Donna's cross-examination that someone else had touched her and the inconsistencies in what she had told others. While Donna testified on direct that she told her friend Amy that she had been touched in her private area, during Bell's cross-examination of Amy, Amy said that Donna told her that Bell had taken her shirt off and touched her chest and that Bell made her put her hand on his penis. During his cross-examination of the SANE nurse, Bell brought out that Donna did not tell her that Bell had licked her vagina or had her touch his penis and that Donna did not tell her that Bell touched her breast. And during his cross-examination of the forensic interviewer, Bell brought out the same testimony—Donna denied that anyone had exposed his genitals to her or had her touch them.

During Donna's mother's direct testimony, she testified that Donna told her that Bell had put his mouth on her and put his finger in her vagina, in contrast to Donna's earlier testimony that she no longer wanted to say that Bell had used his mouth to touch her private area. He brought out on cross-examination that Donna made her outcry to her mother the day after Donna got in trouble for having boys over and for having a hickey.

Before Bell's closing argument, the prosecutor argued the elements of the offenses and asked the jury to remember the details that Donna had given them

through her mother, who was the outcry witness, through the forensic interviewer, through the SANE nurse, and through her friend and her cousin.

During Bell's closing argument, one of his defense attorneys argued,

> . . . when you go back in that jury deliberation room, see if you-all can agree what she said to what different people. It's all over the place. Sometimes it's, Mr. Bell had his clothes off, and [he] made [her] touch his penis. Sometimes it's, he touched my breast. Sometimes it's, licked the vagina. And sometimes it's, touched the vagina. Those are four different stories. They change depending on the witness. . . . It's very difficult, even when taking notes, to keep straight of how many different stories were told to how many different witnesses from 2016 until now.

> You wouldn't expect that. Go back and talk among yourselves. Ask yourselves, would you expect all that change from then to now? Of course you would have expected it from 2009 or ten to 2016 when it first came up. That would be the one. It is certainly not normal to have all these changes from 2016 till now. That's reasonable doubt.

> . . . . They have to answer why there's so many different stories from 2016 till now.

> . . . .

> Now, how this all came out is another suspicious thing. This came out when she [was] whipped severely to having welts. It came out the next day. The very next day when she was beat so bad, she had welts. That affects this case. That creates reasonable doubt.

Bell's other attorney argued,

> . . . [Donna] takes the stand, I don't remember that happened. I can't tell you. Well, if you're 13 years old, and here you are a year or two later and you've repeated the story to innumerable people, how do you take the stand and say I don't remember? You don't. Unless there's something very funny going on. And I don't know what funny could be going on. We don't know. That's not a detail someone is going to mistake about.

23

And that puts into question the other major allegation.

. . . .

You don't send a man to the penitentiary, you don't find him guilty of something this serious when the victim can't remember what she said from the time she was 13 till the time she was 15 and came to court to testify. That's not proof beyond a reasonable doubt.

The prosecutor in rebuttal then began by stating, "Now that we're done putting [Donna] on trial, let's talk about the evidence that you actually got in this case." She argued, "If you believe [Donna] when she said it didn't happen, you have to believe her when she said it did."

Assuming, without deciding, that the trial court abused its discretion by sustaining the prosecutor's second objection, we cannot say, on this record, that Bell was harmed because the record reflects that Bell's ability to thoroughly attack Donna's credibility throughout the trial and in his closing argument was not affected. *See McGee*, 774 S.W.2d at 239 (stating that a court reviews the alleged argument error in light of the facts adduced at trial and in the context of the entire argument); *Wilson v. State*, 473 S.W.3d 889, 902 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (applying constitutional harmless-error test to trial court's assumed error in sustaining the State's objections to the defendant's jury argument). With regard to the specific argument that Bell complains he was prevented from making, the jury could have concluded that even if Donna had been touched by another man, such as the boy who had given her a hickey, this did not mean that Bell did not touch her as well. That is,

24

the probable impact of being prevented from pursuing this particular argument, in light of the evidence and remaining jury arguments, was minimal.[12] Accordingly, we overrule the remainder of Bell's fourth point.

## IV. Cumulative Harm

In his final point, Bell argues that even if each of his previous points do not constitute harm sufficient for reversal, their cumulative effect does, undermining the fundamental fairness of the proceedings. But his individual points either do not demonstrate reversible error or do not show that he was harmed. Therefore, there is no error to cumulate. *See Jenkins v. State*, 493 S.W.3d 583, 613 & n.82 (Tex. Crim. App. 2016) (citing *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009)); *Gamboa*, 296 S.W.3d at 585 ("Though it is possible for a number of errors to cumulatively rise to the point where they become harmful, we have never found that 'non-errors may in their cumulative effect cause error.'"(footnotes omitted)); *Priddy v. State*, No. 02-13-00586-CR, 2014 WL 5307180, at *1 (Tex. App.—Fort Worth Oct. 16, 2014, no pet.) (mem. op., not designated for publication) (citing *Gamboa* for the proposition that for the doctrine of cumulative error to apply, the alleged errors of which an appellant complains must actually constitute error). Accordingly, we overrule his fifth point.

---

[12]The jury deliberated for two hours before acquitting Bell of the count Donna testified that she did not remember.

25

## V. Conclusion

Having overruled all of Bell's points, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 2, 2019