**Affirmed and Opinion filed August 14, 2018.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-17-00097-CR

**JEFFERSON KEITH-OLAN MCMINN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1490840**

### O P I N I O N

A jury found appellant Jefferson Keith-Olan McMinn guilty of "super" aggravated sexual assault of a child younger than six years of age by causing the child's mouth to contact appellant's sexual organ. *See* Tex. Penal Code § 22.021(a)(1)(B)(v), (a)(2)(B), (f)(1). The trial court assessed an agreed punishment of confinement for thirty years. Appellant challenges his conviction in four issues, contending that (1) the evidence is insufficient; (2) the trial court erred by admitting hearsay; (3) the trial court erred by denying appellant's motion to testify free from

impeachment; and (4) the trial court erred by excluding evidence of the child's grandmother's alleged bias against appellant.

We affirm.

## I.      SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence is insufficient to support his conviction because (1) appellant denied that he caused the child's mouth to contact his sexual organ, (2) the child's grandmother "coached" the child, and (3) the child was not credible.

## A.      Standard of Review and Legal Principles

In a sufficiency review, we must consider all of the evidence in the light most favorable to the jury's verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). We defer to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 766. The jury is the sole judge of the credibility and weight to be attached to witness testimony, and we must defer to the jury's resolution of conflicting inferences that are supported by the record. *See id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge includes the statutory elements of the offense as modified by the charging instrument. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012). In this case, the State had to prove that appellant intentionally or knowingly caused the

2

mouth of the child to contact appellant's sexual organ. *See* Tex. Penal Code § 22.021(a)(1)(B)(v), (a)(2)(B).

## B.     The Evidence

Appellant is the child's great uncle. The child's grandmother has had custody of the child since the child was two years old because the child's parents were "meth users." The grandmother's sister and appellant were married and lived nearby. The child was five years old at the time of trial.

The grandmother testified as the outcry witness. The grandmother testified that appellant's wife would sometimes babysit the child and that there was usually no opportunity for appellant to be alone with the child. However, appellant was alone with the child on two occasions in April and August 2015, when the child was three and four years old, respectively. A few weeks after the second occasion, the child told the grandmother, "Uncle Keith goes tee-tee with his big thing." When the grandmother asked appellant's wife about the comment, the wife explained that appellant often leaves the bathroom door open. A few weeks later, the child told the grandmother, "Uncle Keith has a big thing." Then, the child looked down to the floor and slumped her shoulders. The child said, "He put it in my mouth." The grandmother asked the child what appellant did, and the child demonstrated by putting her finger in and out of her mouth. On the following day, the grandmother asked the child to tell appellant's wife what appellant had done. The child conveyed the same story with the same motion.

The grandmother testified that the child had never really seen the male private part at home. The grandmother denied coaching the child about what to say. Appellant's wife testified that when the child told appellant's wife what the child had told the grandmother, it did not seem like the grandmother was telling the child

3

what to say. Both the grandmother and appellant's wife testified that the child did not make up big lies.

The child testified that she knew the difference between a truth and a lie. She demonstrated this concept in response to the State's questions about the color of clothing.

The child testified that on two separate occasions, appellant put his "big thing" or his "peepers" in her mouth. She testified that his "big thing" was his "peepers," and that his "peepers" was used "to pee." The child drew a picture of appellant's penis at trial and the drawing was admitted as an exhibit. She testified that what she drew was "attached to his body . . . On his butt." She testified that he put it in and out of her mouth. She demonstrated at trial by putting a finger in and out of her mouth.

The child testified that the grandmother did not show the child what to draw, or tell her to lie while testifying, or tell her to say untrue things about appellant. The child testified that neither the grandmother nor grandfather told her what to say at trial.

On cross-examination, the child testified that the grandmother did not tell her things about appellant. But the child responded to several questions in a contrary manner:

Q. Did [the grandmother] say [appellant] was a bad guy? Are you sticking your tongue out at him? Did you?
A. I don't like Uncle Keith right now.
Q. Really?
A. Yeah.
Q. Is that what [the grandmother] told you?
A. Yeah.

4

. . . .

Q. Did she tell you Keith's going to get punishment?

A. Yeah.

The child testified that she practiced drawing the picture of appellant's penis the day before trial while at home with the grandmother.

The child also testified that she had several pretend friends. She testified that she did not know the difference between pretend and real:

Q. How can you tell the difference between pretend and real?

A. (Clucking.) (Witness shrugs shoulders.)

Q. You know the difference?

A. (Shakes head negatively.)

Q. You're shaking your head no. Is that your answer? No?

A. Yep.

Before trial, the child underwent a medical exam and forensic interview at the Children's Assessment Center. The examining doctor testified that the child spontaneously made a statement about what appellant had done, and the disclosure was clear and consistent. The doctor did not make any notes during the exam that the child was unable to distinguish between fantasy and reality, or that the doctor felt that the child had been coached.

The interviewer testified that nothing during the interview caused her to make any notes that the child was unable to distinguish between a truth and a lie. The interviewer also testified that she gave the child some Play-Doh, and the child spontaneously made a figure. When the interviewer asked what the figure was, the child responded, "It's Uncle Keith's thing." The interviewer testified that there would have been no time before the interview for the child's caregiver to talk to the child about what to do with the Play-Doh.

5

After appellant was arrested, he gave a statement to a deputy with the Harris County Sheriff's Office. Appellant denied the allegations. He also gave a subsequent statement claiming that the child observed the grandmother performing oral sex on him.

## C. Analysis

"In sexual abuse cases, the testimony of the child victim alone is sufficient to support the conviction." *Tran v. State*, 221 S.W.3d 79, 88 (Tex. App.—Houston [14th Dist.] 2005, pet ref'd) (affirming conviction for aggravated sexual assault of a child because the child testified to all of the elements). Because we will not second-guess the jury's assessment of the credibility and weight of the witnesses' testimony, and because we defer to the jury's resolution of conflicting inferences, appellant's assertion that the child's testimony is not credible plays no part in our review of the sufficiency of the evidence. *See Balderas*, 517 S.W.3d at 766.

As the sole judge of the credibility of witnesses and weight attached to their testimony, the jury could have disbelieved appellant's denial of the allegations, believed that the grandmother did not coach the child, and believed the child's testimony that appellant caused his penis to contact her mouth. *See Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) ("The jury, as the sole judge of the credibility of witnesses, is free to believe or disbelieve all or part of a witness's testimony."); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Despite the child's testimony that she could not distinguish between "pretend and real," the doctor did not have concerns about the child's ability to distinguish between fantasy and reality, and the interviewer did not have concerns about the child's ability to distinguish between truth and fiction. The grandmother and appellant's wife testified that the child did not make big lies. The jury could have credited this testimony.

Accordingly, the evidence is sufficient for a rational juror to find beyond a reasonable doubt that appellant intentionally or knowingly caused the mouth of the child to contact appellant's sexual organ.

Appellant's first issue is overruled.

## II. ADMISSION OF EVIDENCE

In his second issue, appellant contends that the trial court erred by admitting into evidence "a photograph of a Play-Doh figure." Specifically, Exhibit 24 is a still photograph from a video-recorded interview of the child at the Children's Assessment Center. The photograph shows the child making an object out of Play-Doh, though the exact shape and nature of the object is not evident from the photograph. The interviewer testified that the interviewer gave the child Play-Doh during the interview to keep the child occupied. The interviewer testified that the child made the Play-Doh figure spontaneously and "on her own." While the child was playing with the Play-Doh, the child said, "Look what I made." When the interviewer asked what it was, the child responded, "It's Uncle Keith's thing."

Appellant contends that the photograph is "nonverbal hearsay" under Rule 801 of the Texas Rules of Evidence, and no exception to the hearsay rule is applicable. Appellant does not assign error to the admission of any testimony about the photograph or about the child's verbal statements made to the interviewer. The State contends, among other things, that the photograph alone is not a "statement" as defined by Rule 801. We agree with the State.

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's ruling was within the zone of reasonable disagreement, an appellate court should affirm. *Id.* Generally, an

7

appellate court will affirm the trial court's ruling if it is correct under any theory of law applicable to the case. *See State v. Esparza*, 413 S.W.3d 81, 88–90 (Tex. Crim. App. 2013).

For there to be hearsay, there must be a "statement." *See* Tex. R. Evid. 801(c). A "statement" is defined as "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." Tex. R. Evid. 801(a). A photograph itself is not a statement. *See Herrera v. State*, 367 S.W.3d 762, 773 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Wood v. State*, 299 S.W.3d 200, 214–15 (Tex. App.—Austin 2009, pet. ref'd); *see also Black v. State*, 358 S.W.3d 823, 831 (Tex. App.—Fort Worth 2012, pet. ref'd). A photograph, however, may contain statements amounting to hearsay. *See Black*, 358 S.W.3d at 831 (messages on a cell phone); *see also Willover v. State*, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002) ("Inadmissible hearsay testimony does not become admissible simply because it is contained within an admissible document or transcript." (quotation omitted)).

Appellant contends that the "the photograph of the play-doh object was intended as a substitute for [the child's] verbal expression of describing Appellant's penis." Thus, appellant argues that the photograph depicts nonverbal conduct amounting to a "statement" for purposes of the hearsay rule.

Nonverbal conduct may be a "statement" for purposes of the hearsay rule if the conduct "is an assertive substitute for verbal expression." *See Foster v. State*, 779 S.W.2d 845, 862 (Tex. Crim. App. 1989). For example, conduct may be a substitute for verbal expression if "a declarant is asked a specific question and responds assertively to that question in a non-verbal manner." *Id.* Non-assertive conduct, however, is not a statement. *Id.* (no hearsay when the peace officer testified

8

about a person making a throwing gesture toward a tank, where a shotgun was later recovered).

Exhibit 24 shows the child making an object out of Play-Doh. As noted above, appellant does not assign error to the admission of any testimony regarding what the Play-Doh object represents. The child did not make the object in response to a specific question. She made it spontaneously and on her own. Thus, the child's nonverbal conduct that is depicted in the photograph—making the Play-Doh figure—was not a "substitute for verbal expression." *See id. Compare In re Alba*, 540 N.E.2d 1116, 1118 (Ill. App. Ct. 1989) (holding that a child's drawing was hearsay because it was "produced in response to a request that she draw a picture showing where her father puts his 'favorite part'"), *with In re Dependency of B.*, 709 P.2d 1185, 1192 (Wash. 1985) (holding that the therapist's testimony describing the child's conduct while the child played with an anatomically correct male doll—when the child, "on her own," pushed the doll toward the therapist's face while the child held the doll's penis—was nonassertive nonverbal conduct and thus not hearsay).

The trial court did not act outside the zone of reasonable disagreement by overruling appellant's hearsay objection to Exhibit 24 because the trial court reasonably could have believed that the photograph of the child making a Play-Doh figure does not contain a "statement." The trial court did not abuse its discretion.

Appellant's second issue is overruled.

### III.   DENIAL OF *THEUS* MOTION

In his third issue, appellant contends that the trial court erred by denying his motion to testify free from impeachment—a *Theus* motion.[1] Appellant made this

---

[1] *See Theus v. State*, 845 S.W.2d 874, 877 (Tex. Crim. App. 1992); *see also Cisneros v. State*, 290 S.W.3d 457, 468 (Tex. App.—Houston [14th Dist.] 2009) (referring to *Theus* motion), *pet. dism'd, improvidently granted*, 353 S.W.3d 871 (Tex. Crim. App. 2011).

9

motion during trial, testified after the trial court denied it, and was impeached with two prior convictions for forgery that were more than ten years old. *See* Tex. R. Evid. 609(b). But the trial court declared a mistrial after the jury could not reach a verdict. During the retrial, appellant did not make a similar motion, nor did he testify. Thus, the convicting jury never learned of appellant's prior convictions.

"To preserve error on a trial court's ruling allowing the State to impeach a defendant with prior convictions, the defendant must have actually testified." *Caballero v. State*, 919 S.W.2d 919, 923 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *see also Jackson v. State*, 992 S.W.2d 469, 479–80 (Tex. Crim. App. 1999) (holding that the defendant failed to preserve error from the trial court's denial of his "request to foreclose cross-examination about extraneous offenses" during punishment because the defendant did not testify). One reason for this rule is that the "alleged harm would be speculative because the trial court could change the previous ruling and prohibit the impeachment, or the prosecutor may decide not to use the prior conviction." *Caballero*, 919 S.W.2d at 923. If the defendant does not testify, an appellate court would be required to speculate about whether any resulting error in permitting impeachment would have been harmless. *Jackson*, 992 S.W.2d at 479 (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)).

On appeal, appellant does not argue that he was harmed by the trial court's denial of the *Theus* motion during the first trial. Generally, evidentiary and non-constitutional error that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b); *see also* Tex. R. Evid. 103(a). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez v. State*, 541 S.W.3d 306, 313 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Conversely, an error does not affect a substantial right if we have a fair assurance that the error did not influence the jury, or had but a slight effect. *Id.*

10

Because appellant did not testify during the retrial, he was never actually impeached with evidence of the prior convictions. *See Morgan v. State*, 891 S.W.2d 733, 735 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Thus, "the impact any erroneous impeachment may have had in light of the record as a whole is not affirmatively demonstrated in the appellate record." *Yanez v. State*, 199 S.W.3d 293, 302–03 (Tex. App.—Corpus Christi 2006, pet. ref'd) (no harm from trial court's failure to hold a hearing about the admissibility of impeachment evidence under Rule 609).

Under these circumstances, we cannot conclude that appellant's substantial rights were affected. *See id.* Assuming without deciding that this alleged error was preserved, we have a fair assurance that the trial court's ruling during the first trial did not influence the jury because the jury never heard the evidence that appellant wanted the trial court to exclude.

Appellant's third issue is overruled.

## IV. EXCLUSION OF EVIDENCE

In his fourth issue, appellant contends that the trial court erred by excluding evidence that the grandmother and her husband evicted appellant's wife from a recreational vehicle while charges against appellant were pending. Assuming without deciding that the trial court erred in doing so, we hold that appellant was not harmed.

### A. Background

Appellant's wife testified that there had been a "chilling" in the relationship between her and her sister (the child's grandmother). She testified that she was not close with her sister anymore because of "the case" and that "[t]his whole thing has separated us." She testified that at one point she was living in a recreational vehicle

11

owned by the grandmother and the grandmother's husband. She testified that she moved out of the vehicle in late December.[2] Appellant sought to cross-examine appellant's wife about why she moved out of the vehicle, and the State objected based on relevance. The trial court sustained the objection.

Appellant made an offer of proof through questioning appellant's wife. She testified during the offer that she began living in the vehicle in September 2016. She was supposed to pay $200 per month in rent, but she paid only $100 in November. Also in November, she had a conversation with the grandmother and was told "that if I supported Keith, that I could get out of the [vehicle] and we would go our separate ways and call it a day." Ultimately, the grandmother's husband told appellant's wife to get out of the vehicle by December 31 because she had not paid them anything for December.

Appellant argued that the evidence was relevant to show why appellant's wife "was put out of her house" and that the grandmother was "trying to draft her on their side that he's guilty of this."[3]

## B. Legal Principles for Harm Analysis

Generally, evidence of a witness's bias or animus toward the defendant is relevant, regardless of whether the witness has displayed the bias before or after the date of the charged offense. *See Billodeau v. State*, 277 S.W.3d 40, 42–43 (Tex. Crim. App. 2009). The proponent of evidence to show bias must show that the evidence is relevant by demonstrating that a nexus, or logical connection, exists

---

[2] We note that appellant's first trial, which resulted in a mistrial, occurred in late September 2016, and the second trial occurred in January 2017.

[3] The State contends that appellant failed to preserve error. We assume without deciding that appellant preserved error. *See* Tex. R. App. 47.1.

between the evidence and the witness's potential motive to testify in favor of the other party. *See Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004).

Even if the accused meets this burden, however, the accused still must show that the error affected a substantial right. *See* Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a); *see also Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007) ("The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b)."). As mentioned above, error is harmless if we have a fair assurance that the error did not influence the jury, or had but a slight effect. *See Gonzalez*, 541 S.W.3d at 313.

In conducting this analysis, we consider the record as a whole. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We consider all of the admitted evidence, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* And, we may consider the jury instructions, the State's and defendant's theories of the case, closing arguments, and voir dire if material to the appellant's claim. *Id.*

## C. No Harm

The jury heard that appellant's wife had been living in the recreational vehicle but then ceased living in the vehicle before trial. The only excluded evidence was one of the potential reasons: the wife's support for appellant. The excluded evidence tended to show that the grandmother evicted appellant's wife because appellant's wife supported appellant at trial, despite the allegation of sexual assault.

Although it may be relevant that the grandmother harbored bias against appellant and his wife subsequent to the child's allegation, this fact was already developed in the record. Appellant's wife testified that she and the grandmother

became separated because of "the case." Through cross-examination, the grandmother admitted that she refused to talk to appellant's investigator before trial. Through the child's testimony, trial counsel elicited evidence that the grandmother said appellant would "get punishment" and that he was in jail. The child testified that the grandmother told her those things "because Keith's a bad guy" and he was "not a good guy anymore."

Appellant's defensive theories focused on (1) the lack of credibility of the child's testimony; (2) the lack of forensic evidence; and (3) evidence that the grandmother coached the child. Through a deputy, the State elicited evidence that appellant had claimed before trial that the grandmother performed oral sex on appellant, and the child observed the act. Appellant's counsel argued to the jury that the grandmother lied about not having oral sex with appellant, and that other parts of her testimony were not believable.

Thus, appellant was able to fully establish that the grandmother harbored a potential bias against appellant—both before and after the child's outcry. *Cf. Robison v. State*, 461 S.W.3d 194, 200 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (noting that the exclusion of evidence is harmless if the nature of the evidence is established through other means). The jury was aware of the facts underlying the grandmother's potential bias and could infer the bias without appellant's wife's testimony that she was told she would have to leave the recreational vehicle if she supported appellant. *See Bellaire v. State*, 110 S.W.3d 664, 671–72 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (harmless error from excluding evidence of the complainant's settlement demand figure from the defendant's employer after the defendant sexually assaulted the complainant; "Although the jury did not know the exact amount of the settlement demand, they did know it existed and could infer for themselves any bias or motive the complainant may have had against appellant and

14

could balance that factor against the other evidence presented."). Although the jury did not know of the exact reason for appellant's wife ceasing to live in the grandmother's recreational vehicle, the jury did know that the wife ceased living in the vehicle before trial and the jury was free to consider this evidence in conjunction with other evidence of the grandmother's alleged bias. *See id.* The jury naturally would have inferred that the grandmother became biased against appellant, at the very least, after the child claimed that appellant sexually assaulted her.

After reviewing the entire record, we have a fair assurance that the alleged error did not influence the jury, or had but a slight effect. *See Gonzalez*, 541 S.W.3d at 313. Thus, appellant's substantial rights were not affected, and we disregard the alleged error as harmless. *See id.*

Appellant's fourth issue is overruled.

## V.    CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/    Ken Wise
Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise.
Publish — Tex. R. App. P. 47.2(b).

15