# NO. 12-23-00092-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BILLY REX DOSS,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Billy Rex Doss appeals his conviction for delivery of between one and four grams of methamphetamine. Appellant raises six issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with delivery of between one and four grams of methamphetamine. The indictment further alleged that Appellant previously was convicted of felony-possession of a controlled substance. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. At trial, the State presented evidence obtained in cooperation with a confidential informant, who is depicted in a muted video making a controlled drug-buy from Appellant. That informant was deceased by the time Appellant's case went to trial.

Ultimately, the jury found Appellant "guilty" as charged, and the matter proceeded to a bench trial on punishment. Following the presentation of evidence, the trial court found the enhancement allegation to be "true" and sentenced Appellant to imprisonment for forty-nine years. This appeal followed.

In his first issue, Appellant argues that the trial court erred by admitting State's Exhibits 1, 2, and 5–14, which consist of the videos (unmuted and muted) from the confidential informant, photographs from the video, the evidence envelope, a plastic baggie containing the methamphetamine obtained from the confidential informant, the lab report related to the contents of the plastic baggie, and the lab submission report of the contents from the plastic baggie, because it did so in violation of Appellant's confrontation rights. In his second issue, Appellant argues that the trial court erred by admitting narrative descriptions of the video "from the confidential informant" in violation of his confrontation rights.

## Standard of Review and Governing Law

Ordinarily, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Robisheaux v. State*, 483 S.W.3d 205, 217 (Tex. App.–Austin 2016, pet. ref'd). However, constitutional rulings, such as the determination of whether a statement is testimonial or non-testimonial under the confrontation clause, are reviewed de novo. *See Watson v. State*, 421 S.W.3d 186, 195 (Tex. App.–San Antonio 2013, pet. ref'd).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 400–01, 85 S. Ct. 1065, 1066, 13 L.Ed.2d 923 (1965). The Confrontation Clause and cross examination are designed, at least in part, to ensure both fairness in criminal proceedings and the reliability of evidence offered before the fact finder. *See Lilly v. Virginia*, 527 U.S. 116, 123–24, 119 S. Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). Cross examination provides an avenue to test the believability of a witness and the truth of that witness's testimony. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

The Confrontation Clause is designed to guard against the presentation of testimonial and out-of-court statements made by an absent witness. *Watson*, 421 S.W.3d at 195. At the heart of the issue is a defendant's inability to utilize the safeguards of cross examination to ensure and test the witness's credibility. *Id.* An appellate court weighs each Confrontation Clause issue on a case-by-case basis, balancing the State's right to present evidence with the defendant's right to cross-examine and the risk factors associated with admission of the evidence. *Id.* at 195–96 (citing *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000)).

In *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L.Ed.2d 177 (2004), the Supreme Court held that the Confrontation Clause bars the admission of an out-of-court testimonial statement made by a non-testifying witness absent evidence that (1) the witness is unavailable to testify and (2) "the defendant has had a prior opportunity to cross-examine" the witness. In the instant case, the key issue is whether the muted video and other exhibits were testimonial.[1]

In determining whether a statement is testimonial, an appellate court looks to "the formal nature of the interaction, the intent of the declarant, or some combination of the two factors." *Moore v. State*, 169 S.W.3d 467, 471 (Tex. App.–Texarkana 2005, pet. ref'd). The Confrontation Clause is more a procedural guarantee than a substantive one. *Crawford*, 541 U.S. at 61, 124 S. Ct. at 1370. Thus, if the proposed testimony is the functional equivalent of an ex parte, in-court statement, the statement is testimonial. *Watson*, 421 S.W.3d at 196. Statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.*

**Discussion**

In *Watson*, the appellant argued that the trial court erred by admitting a silent video recording from a device worn by a confidential informant in violation of his confrontation rights. *See id.* at 195. In analyzing the issue, the court observed that the silent video did not amount to the same situation as structured police questioning. *See id.* at 197. Moreover, the court determined that the setting of a confidential informant's purchasing contraband is not one which would lead an objective witness reasonably to believe that the statement would be available for later judicial proceedings. *See id.* In reaching its conclusion that a silent video recording neither was a statement nor was it testimonial and, therefore, not violative of the appellant's confrontation rights, the court noted that the silent video recording is more akin to a surveillance video than to a testimonial statement by an individual, particularly in light of the court of criminal appeals' determination that "a silent [video recording] is no different than a collection

---

[1] Exhibits 1 and 2 consist of the unmuted and muted version of the confidential informant's video footage of the drug buy respectively. In his first, third, and fourth issues, Appellant argues that the trial court either erred or abused its discretion by admitting Exhibit 1 into evidence. However, the record reflects that, of these two exhibits, only Exhibit 2 was published to the jury, while Exhibit 1 was admitted "only for purposes of the record" and not seen by the jury. Because the record reflects that the jury never considered Exhibit 1, we do not consider it in our analysis of Appellant's first, third, and fourth issues. *See* TEX. R. APP. P. 47.1.

of photographs[.]" *Id.* (quoting *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988)).

In *Poulos v. State*, 799 S.W.2d 769 (Tex. App.–Houston [1st Dist.] 1990, no pet.), the appellant was stopped for suspected driving under the influence, and the officer requested that she perform several field-sobriety tests. *Id.* at 770. During trial, she argued that the silent video recording of the stop amounted to a custodial interrogation and, therefore, violated her federal and state constitutional protections against self-incrimination. *Id.* at 770–71. Relying on the court of criminal appeals' decision in *Miffleton v. State*, 777 S.W.2d 76 (Tex. Crim. App. 1989), the court held the images of the appellant captured on the silent video recording were not testimonial in nature and, therefore, did not offend the Fifth Amendment privilege against self-incrimination. *See Poulos*, 799 S.W.2d at 771.

In the instant case, the video depicts the informant, who is given the hidden camera, a view of the interior of her car as she drives to Appellant's residence, her interaction with Appellant, who can be seen handing her a small baggie and to whom she hands money, another view from the front seat of her car in which the baggie, which contains a white substance, is visible, and the officer's retrieval of the hidden camera, which he focuses on the baggie where it rests in the front seat of the informant's car. Based on our review of the muted video comprising Exhibit 2, we conclude that it is not a statement, does not involve police questioning, nor does it depict a setting which would lead an objective witness reasonably to believe that it would be available for later judicial proceedings. *See Watson*, 421 S.W.3d at 197. It only depicts Appellant's appearance and actions. Therefore, it was not testimonial. *See id.* Exhibits 5–11 consist of photographs taken from the video. Thus, they are no more testimonial in nature than the muted video from which they were derived.[2] Accordingly, we hold that the trial court did not err in admitting Exhibits 2 and 5–14 in the face of Appellant's objection that doing so violated his rights under the Confrontation Clause. Appellant's first issue is overruled.

---

[2] The remaining exhibits consist of a lab submission envelope, narcotics, a lab report, and a lab submission form. With regard to these exhibits, Appellant argues that they are testimonial evidence resulting from the confidential informant's actions. However, Appellant makes no further argument apart from this conclusory statement as to how these exhibits amount to testimonial evidence from the confidential informant. Further, Appellant has not cited, nor is this court aware of, any case law supporting such a proposition. *See* TEX. R. APP. P. 38.1(i). Accordingly, we cannot conclude that the trial court erred in admitting the remaining exhibits over Appellant's Confrontation-Clause objection.

Appellant further argues that the trial court erred by admitting narrative descriptions of the video "from the confidential informant" in violation of his confrontation rights. However, it is apparent that Appellant is referring not to any narrative testimony from the confidential informant but rather to testimony offered by Angelina County Sheriff's Office Lieutenant Wesley Waggonner about the video after it was published to the jury. Appellant does not point out which portions of Waggonner's testimony are the subject of his second issue. But since Waggonner was available for and was, in fact, subjected to cross-examination, we hold that the Confrontation Clause was satisfied. *See Coronado v. State*, 351 S.W.3d 315, 339 (Tex. Crim. App. 2011). Appellant's second issue is overruled.

## HEARSAY

In his third issue, Appellant argues that the trial court abused its discretion by admitting Exhibits 1, 2, and 5–14 in violation of the hearsay rule.[3]

### Standard of Review and Governing Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Texas Rule of Evidence 801(a) defines a "statement" as either (1) an oral or written verbal expression or (2) nonverbal conduct of a person, if such conduct is intended by the person as a substitute for verbal expression. *See* TEX. R. EVID. 801(a); *Watson*, 421 S.W.3d at 196. For instance, conduct may be a substitute for verbal expression if a declarant is asked a specific question and responds assertively to that question in a non-verbal manner. *See McMinn v. State*, 558 S.W.3d 262, 269 (Tex. App.–Houston [14th Dist.] 2018, no pet.). Non-assertive conduct, however, is not a statement. *Id.* (citing *Foster v. State*, 779 S.W.2d 845, 862 (Tex. Crim. App. 1989) (no hearsay when peace officer testified about person making throwing gesture toward a tank where shotgun later was recovered)). Moreover, a photograph itself is not a statement but may contain statements amounting to hearsay, such as photographs of messages on a cell phone

---

[3]Appellant makes no argument regarding why the admission of the evidence envelope, the plastic baggie containing the narcotics, the lab report, and lab submission report violated the hearsay rule. *See* TEX. R. APP. P. 38.1(i). Accordingly, we cannot conclude that the trial court abused its discretion in admitting these exhibits over Appellant's hearsay objection.

screen. *See McMinn*, 558 S.W.3d at 268 (citing *Black v. State*, 358 S.W.3d 823, 831 (Tex. App.–Fort Worth 2012, pet. ref'd)). And, as set forth above, a silent video simply is the equivalent of a collection of photographs. *See Huffman*, 746 S.W.2d at 222.

As we discussed previously, the court in *Watson* concluded that a silent video recording depicting a drug-buy did not amount to a "statement" and is more akin to a surveillance video than it is to a statement. *See Watson*, 421 S.W.3d at 197. There, the appellant also argued that the silent video of the drug-buy was inadmissible hearsay. *See id.* The video in *Watson* depicted the informant's hands on the steering wheel of the vehicle, the informant's knocking on the door of the appellant's residence, and an exchange of money for drugs. *See id.* Ultimately, the court of appeals concluded that the silent video was not intended by the appellant to be a substitute for a verbal expression under Rule 801(a). *See id.*; *see also Fonseca v. State*, No. 08-10-00227-CR, 2022 WL 2719027, at *8 (Tex. App.–El Paso July 13, 2022, pet. ref'd) (mem. op., not designated for publication) (video without audio depicting only demeanor of complaining witness did not constitute a "statement," and, thus, there was no hearsay violation).

In the instant case, based on our review of Exhibits 2 and 5–11, we conclude that the muted video and photos derived therefrom contain neither verbal statements nor any assertive substitute for verbal expressions. Appellant does not contend that any specific questions were asked and answered, either verbally or nonverbally, in the video or in the photos. As the court concluded in *Watson*, nothing occurred, either in the muted video or in photos, which we can conclude either Appellant or the confidential informant intended to be an assertive substitute for a verbal expression. *See Watson*, 421 S.W.3d at 197. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's hearsay objections to Exhibits 2 and 5–14. Appellant's third issue is overruled.

## AUTHENTICATION

In his fourth issue, Appellant argues that the trial court abused its discretion by admitting Exhibits 1, 2, and 5–14 because the exhibits were not authenticated properly.[4]

It is the jury's role ultimately to determine whether an item of evidence is indeed what its

---

[4] Appellant makes no argument regarding why the admission of the evidence envelope, the plastic baggie containing the narcotics, the lab report, and lab submission report were not authenticated properly. *See* TEX. R. APP. P. 38.1(i). Accordingly, we cannot conclude that the trial court abused its discretion in admitting these exhibits over Appellant's objection to lack of proper authentication.

proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable determination by the jury that the proffered evidence is authentic. *Fowler v. State*, 544 S.W.3d 844, 848–49 (Tex. Crim. App. 2018). This has been described as a "liberal standard of admissibility." *Id.* at 849. Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue. *Id.* The testimony to meet this "liberal standard" may be given not only by the photographer or a person photographed, but by any other witness who knows the facts, even though the witness did not take the photograph himself or see it taken. *See Huffman*, 746 S.W.2d at 222.

In *Fowler*, the officer retrieved a surveillance video from a store which showed the appellant's purchase of duct tape and knives used to commit a crime. *See Fowler*, 544 S.W.3d at 846. The officer testified that he requested the video from the store manager, the video contained a date and timestamp from the store, and the video showed the appellant purchasing the duct tape and knives. *Id.* at 849. The officer testified that he used a camera to record the surveillance video while it played on a screen and downloaded the video to the police department's hard drive. *Id.* Despite the lack of testimony from either the store manager or another employee who either retrieved the video tape, was responsible for maintaining the surveillance equipment, or was working when appellant purchased items, the court of criminal appeals held that the officer's testimony supplied sufficient facts within the zone of reasonable disagreement to support a jury's determination that the video was authentic. *Id.* at 850.

Once again, the court's opinion in *Watson* is instructive. There, officers searched the confidential informant and his vehicle to confirm the informant had no money or drugs. *See Watson*, 421 S.W.3d at 191. The officers fitted the informant with an audio/video recording device and gave him money with which to purchase the drugs. *Id.* The officers maintained full surveillance of the informant's traveling to the appellant's residence, watched as he entered the residence, and watched him as he exited the residence approximately eleven minutes later. *Id.* The officers then resumed their surveillance of the informant as they followed him to an agreed meeting point. *Id.* The record before the court reflected that the video recording ran continuously for over one-half hour—the time from the when the officers identified themselves on the recording until they removed the videotape after the transaction. *See id.* The only break

in the officers' visual surveillance was during the time the informant rounded the corner and entered the appellant's residence. *Id.* Even though the officers were not present during the entirety of the time the recording took place, the court of appeals held the trial court reasonably could have found that the officers properly authenticated the silent video recording pursuant to Texas Rule of Evidence 901(a). *Id.* at 192; *see also* **Cain v. State**, 501 S.W.3d 172, 174–176 (Tex. App.–Texarkana 2016, no pet.) (officer searched informant and vehicle before transaction and found no drugs, equipped informant with camara, gave cash to informant to purchase contraband, followed informant to the appellant's residence, saw informant enter residence and later emerge, testified that he watched same video, which appeared to record continuously, had not been materially altered or changed, was a fair and accurate depiction of events, and officer was qualified to operate recording system which was working on date of transaction; court of appeals held officer sufficiently authenticated video despite having not personally observed drug transaction).

In the instant case, Waggonner testified that he searched the confidential informant for drugs, gave her a recording device, followed her as she traveled in her vehicle to Appellant's residence, observed her enter and exit the residence, followed her to an agreed meeting point, obtained the drugs she purchased from Appellant, searched her, labeled the baggie containing the drugs, placed the drugs in an envelope, filled out the paperwork on them, and stored them in an evidence locker until they could be transferred to the crime lab. Waggoner further testified that the muted video of the drug transaction was a continuous, fair, and accurate description of what he could see of the location during the drug transaction, even though he conceded that he did not personally observe the transaction. Based on Waggonner's testimony, we hold that such testimony supplied facts sufficient to support a reasonable jury determination that the muted video comprising Exhibit 2, as well as the photographs derived therefrom comprising exhibits 5–11, are authentic. *See* **Fowler**, 544 S.W.3d at 848–49; **Watson**, 421 S.W.3d at 191; *see also* **Cain**, 501 S.W.3d at 174–176. Appellant's fourth issue is overruled.

## CHAIN OF CUSTODY

In his fifth issue, Appellant argues that the trial court abused its discretion by admitting Exhibits 12, 12A, 13, and 14, which consist of an evidence envelope, a plastic baggie containing the narcotics obtained from the confidential informant, the lab report of the contents of the

plastic baggie, and the lab submission report of the contents from the plastic baggie from the confidential informant, because the State failed to establish the chain of custody necessary to admit the exhibits. Specifically, he argues that because no one who actually saw the drug transaction testified at trial, the chain of custody was broken.

As a condition precedent to the admission of evidence, the trial court must be satisfied that the evidence offered is what the proponent claims. *See* TEX. R. EVID. 901(a); ***Angleton v. State***, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998); ***Martinez v. State***, 186 S.W.3d 59, 62 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd). This can be accomplished by testimony from a witness with knowledge that an item is what it is claimed to be. *See* TEX. R. EVID. 901(b)(1). The authentication requirement for admissibility is met once the State has shown the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory. ***Martinez***, 186 S.W.3d at 62; ***Gallegos v. State***, 776 S.W.2d 312, 315–16 (Tex. App.–Houston [1st Dist.] 1989, no pet.). Any gaps and minor theoretical breaches go to the weight rather than the admissibility of the evidence, absent a showing of tampering. ***Martinez***, 186 S.W.3d at 62; *see also* ***Medellin v. State***, 617 S.W.2d 229, 232 (Tex. Crim. App. [Panel Op.] 1981); ***Gallegos***, 776 S.W.2d at 315–16.

In ***Cain***, the officer searched the confidential informant and his vehicle for contraband, and when none was found, he sent the informant to purchase drugs from the appellant. *See* ***Cain***, 501 S.W.3d at 175. A hidden video showed the appellant putting something in a plastic bag and handing it to the informant. *See id.* Thereafter, the informant delivered the bag to the officer. *See id.* The officer testified the bag contained pills, which later were submitted to a Department of Public Safety (DPS) lab. *See id.* The DPS lab assigned a unique identification number and reported that the pills contained a controlled substance. *See id.* A DPS forensic expert brought the sealed package containing the drugs to trial. *See id.* The evidence before the court did not suggest fraud or tampering in the process. *See id.* Ultimately, the court of appeals concluded that the chain of custody was proven sufficiently. *See id.*

In ***Cantu v. State***, No. 07-16-00389-CR, 2018 WL 618610 (Tex. App.–Amarillo Jan. 25, 2018, no pet.) (mem. op., not designated for publication), the evidence reflected that the officers searched the confidential informant and his vehicle before he met with appellant; no drugs were found. *Id.* at *1. The officers surveilled the informant while he met with the appellant and, later, recovered drugs from the informant. *See id.* The informant's meeting with appellant was

9

recorded with hidden video surveillance equipment inside the informant's vehicle, and that video was shown at trial. *See id.* at *1–2. The officers testified they photographed, weighed, field-tested, and stored the drugs recovered from the informant in marked containers in an evidence locker. *See id.* at *3. The containers were delivered to the crime laboratory and assigned identification numbers. *See id.* After testing, the drugs were repackaged and sealed. *See id.* The informant did not testify because he did not remember the relevant events. *See id.* at *2. The court of appeals concluded that a reasonable juror could find that the drugs and lab results were authenticated through a chain of custody. *See id.* at *3. The court of appeals noted that any theoretical gaps or breaches in the chain of custody did not affect the admissibility of the drug evidence, but rather, such issues were considered by the jury in determining the weight of the evidence. *See id.*

In the instant case, Waggonner testified that he searched the confidential informant for drugs, gave her a recording device, followed her as she traveled in her vehicle to Appellant's residence, observed her enter and exit the residence, followed her to an agreed meeting point, obtained the drugs she purchased from Appellant, searched her, labeled the baggie containing the drugs, placed the drugs in an envelope, filled out the paperwork on them, and stored them in an evidence locker until they could be transferred to the DPS crime lab. DPS Crime Lab Section Supervisor Stephanie Jackson testified that the lab's evidence-receiving staff took the information from the submission form, entered it into their system, assigned the lab's own identifying information, placed the evidence in their vault until such time as the lab tested the evidence before it placed it back into a package, resealed the package, and held the evidence until trial. Because the video of the drug transaction was played at trial, the jury was able to observe the supposed gap in the chain of custody about which Appellant complains. But even assuming arguendo that the jury had not seen this evidence, this supposed gap in the chain of custody goes to the weight of the evidence rather than its admissibility. *See Martinez*, 186 S.W.3d at 62.

Based on our review of the record, we conclude that the chain of custody was proven sufficiently. *See Cain*, 501 S.W.3d at 175; *see also Cantu*, 2018 WL 618610 at *1–3. Therefore, we hold that the trial court did not abuse its discretion in admitting Exhibits 12, 12A, 13, and 14. Appellant's fifth issue is overruled.

10

In his sixth issue, Appellant argues that the evidence is insufficient to support the trial court's judgment.

## Standard of Review

The ***Jackson v. Virginia***[5] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson v. Virginia***, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony. *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. ***Id.*** at 15. Juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or

---

[5] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

presumptions. *Id.* An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Discussion**

To satisfy its burden of proof that Appellant committed the offense of delivery of methamphetamine as charged in the indictment, the State was required to prove beyond a reasonable doubt that Appellant knowingly delivered methamphetamine, the aggregate weight of which was one gram or more but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d) (West Supp. 2023); *see also id* § 481.002(8) (West Supp. 2023) (defining "deliver" as actual or constructive transfer of controlled substance to another).

In the instant case, the jury was able to consider Waggonner's testimony that he searched the confidential informant and her vehicle for narcotics and paraphernalia prior to the transaction. Waggonner further testified that he gave her a recording device and followed her to Appellant's address. Later, Waggoner followed her to another location, searched her and her vehicle, and obtained a clear package containing what he believed to be methamphetamine. According to Waggonner, he did not find any money or other drugs on the informant or in her vehicle. Waggonner stated that he retrieved the recording devices and placed them in his vehicle for safekeeping and placed the package of methamphetamine in a signed envelope with Appellant's name, a case number, the offense, and time and date on it. He further stated that he sealed the envelope and placed it in an evidence locker for safekeeping until the envelope was sent to the DPS lab in Tyler for testing. Waggonner testified that he returned to his office to upload the video and audio to his database, to document evidence, and to write his report. There, he also watched the video taken by the informant. Waggonner opined that the video appeared to be a continuous, fair, and accurate depiction of what he could see of the location during the transaction. He identified the money and drugs depicted in the muted video and stated that the

screenshots from the drug-buy were fair and accurate depictions from the video. The jury was able to observe the drug transaction between Appellant and the informant in the muted video.

Jackson testified she received the methamphetamine in an envelope from the Angelina County Sheriff's Office. At trial, she opened the envelope in front of the jury and identified the condition of the drugs as the same as when she last encountered them. She testified that based on her lab analysis, the bag contained 3.43 grams of methamphetamine.

Appellant argues that the State failed to prove that the methamphetamine can be linked to him because Waggonner admitted on cross examination that he only searched the informant's pockets and purse but did not search her bra, underwear, or socks. We disagree. Appellant's argument is based on the premise that the informant could have concealed additional packages of methamphetamine (presumably weighing less than 1 gram) elsewhere on her person. But such an argument is an exercise in speculation, which begats more speculation, and which ultimately leads to the notion that nothing short of the most invasive search of an informant's person and vehicle ever would be enough to satisfy the State's burden of proof. We reiterate that juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial but are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *See **Hooper***, 214 S.W.3d at 15. Nothing in the record before us suggests that Waggonner's search of the informant was inadequate or that he should have had any reason to believe that a more thorough search was necessary. Thus, we conclude that Waggonner's testimony about his search of the informant, conducted both before and after the transaction, permitted the jury reasonably to find that the methamphetamine he recovered from the informant was the same methamphetamine the jury observed Appellant hand her in the video.

Based on our review of the record, we conclude that there was ample evidence to permit the jury to find beyond a reasonable doubt that Appellant knowingly delivered to another between one and four grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(8), 481.102(6), 481.112(a), (d). Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment. Appellant's sixth issue is overruled.

13

## DISPOSITION

Having overruled Appellant's first, second, third, fourth, fifth, and sixth issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered December 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 20, 2023**

**NO. 12-23-00092-CR**

**BILLY REX DOSS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2020-0072)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*